# CASES IN CHANCERY.

## THE SENECA WOOLLEN MILLS vs. TILLMAN.

A., the defendant, the owner of a water power in the Seneca river, sold to the complainants, for the use of their mills, &c. a portion of such water power, and conveyed the same by a deed which described the subject matter of the grant, and the extent of the right granted, as follows: "All and singular the water power, water rights, and right to use the waters of the Seneca river, or outlet, for hydraulic purposes, particularly described as follows: being part of the water power and water rights belonging and appertaining to certain lands lying and being in the place aforesaid, on the south side of the Seneca river, conveyed by C. to the said A., to which lands there is now appurtenant the right of drawing, and using for hydraulic purposes, one-half of the surplus waters of the Seneca river, or Cayuga and Seneca canal, belonging to the said A., except the right of drawing and using sufficient water to propel two run of flouring millstones, as conveyed to F. by said A. And the grant of water power and water rights, hereby intended, is the right of drawing, using, occupying and enjoying forever, for hydraulic purposes, sufficient of the waters of the said Seneca river, or surplus waters of the said canal, so as aforesaid belonging to the said A., to propel five run of millstones used for flouring wheat, with the necessary machinery attached thereto, by the most approved wheels, *to be drawn, used, and enjoyed, upon an equality of right with three other like run of millstones, to be used by the said A., his heirs and assigns;* which said five run and three run of millstones shall have preference in the use of the water above described, over the remaining rights now belonging to the said A." The company subsequently acquired the title to four-sixth parts of the privilege of using the water for the two runs of stones which had previously been granted by A. to F.; and an inchoate right to the other two-sixth parts of that privilege, under a sheriff's sale thereof, but the time of redemption as to those two-sixths had not expired.

*Held,* that the rights of the parties, under the deed of conveyance, and the previous grant to F., were as follows: That the two run power previously granted to F. must be first satisfied. And that so far as the company had acquired that water power, its right to use it was exclusive of the defendant A. That while the company, or the owner of the other two-sixths of the two run power, were in the use of that water power, the defendant was not at liberty to use the water, or to suffer it to run to waste, so as in any way to interfere with, or impair, that right.

The Seneca Woollen Mills *v.* Tillman.

*Held further*, that after supplying that two run power, or so much thereof as the parties owning it wished to use, according to their several rights therein, if there was not sufficient surplus water, on that side of the river, at the upper level, to propel eight runs of millstones, exclusive of the half of the surplus waters, or so much of that half as was actually used on the north side, the complainant and defendant must participate in the use of such surplus, in the proportion of five parts to the former and three parts to the latter. And that, in the estimate of the water power used by each, there must be included so much of the surplus water as was suffered to run to waste, by the negligence of the parties, respectively; or by their suffering the flumes or other works, which they were severally bound to repair, to be out of order.

*Held also*, that in no event had the defendant the right to use more than a proportional part of his three run water power, until the machinery of the complainants was fully supplied, to the extent of a six and one-third run power. And that he had not the right, by running his saw mill in the night time, in dry seasons, so to draw down the surplus waters of the upper level as not to leave, for the complainants, their proper proportion of the water, in reference to the number of hours in the day that the water power was used by each. But that neither party had any right to complain that the other, by running his machinery in the night, obtained the use of water which would otherwise have flowed over the dam and been wasted; provided the water in the pond was not drawn down so as to impair its use during the ordinary hours of using it by the other party.

Where a party claims title to property under a recent conveyance from the defendant himself, he is not obliged to bring a suit at law, against the grantor, for disturbing him in his possession, in violation of the express provisions of his grant, before applying to the court of chancery for relief. It is only where the right of the complainant to the privilege claimed admits of doubt, that the court requires him to establish his right at law, previous to the granting of an injunction.

THIS was an application to dissolve an injunction, upon the matter of the bill only, or to modify the same in conformity to the rights of the parties. The bill was filed by an incorporated manufacturing company, to restrain the defendant from using the surplus waters of the Seneca river, on the south side of the upper level at Seneca Falls, to the injury of the company's mills. Previous to the 4th of June, 1844, the defendant was the owner of all the water power upon that side of the upper level; except the right of using sufficient water to propel two run of flouring millstones, which he had previously granted to D. W. Forman. On the last mentioned day the defendant sold and conveyed to the company, for the use of its mills and manufacturing establishment, a portion of his water power before mentioned, for the consideration of $3,500. And the sub-

ject mattter of the grant, and the extent of the right granted, was described in the conveyance thereof as follows: " All and singular the water power, water rights, and right to use the waters of the Seneca river, or outlet, for hydraulic purposes, particularly described as follows: being part of the water power and water rights belonging and appertaining to certain lands lying and being in the place aforesaid, on the south side of the Seneca river, conveyed by S. N. Bayard and wife to A. Bascom and A. P. Tillman, and subsequently conveyed, by G. V. S. and A. B. and their wives, to A. P. Tillman, by deed of partition dated 26th May, 1828; to which lands conveyed by the last mentioned deed there is now appurtenant the right of drawing, and using for hydraulic purposes, one half of the surplus waters of the Seneca river, or Cayuga and Seneca canal, belonging to the said party of the first part, except the right of drawing and using sufficient water to propel two run of flouring millstones, as conveyed to D. W. Forman, by said A. P. Tillman and wife. And the grant of water power and water rights, hereby intended, is the right of drawing, using, occupying, and enjoying forever, for hydraulic purposes, sufficient of the waters of the said Seneca river, or surplus waters of the said canal, so as aforesaid belonging to the party of the first part, to propel five run of millstones used for flouring wheat, with the necessary machinery attached thereto, by the most approved wheels, *to be drawn, used, and enjoyed, upon an equality of right with three other like run of millstones to be used by the said party of the first part, his heirs and assigns;* which said five run and three run of millstones shall have preference, in the use of the water above described, over the remaining rights now belonging to the said party of the first part." The conveyance from the defendant, to the company, also contained a grant of the privilege and right of entering upon his lands below the dam, and between the canal and the river, and to construct across such lands a culvert, and to convey the waters granted through such culvert, and to repair and reconstruct the culvert from time to time, as might be necessary. And it contained a general covenant on the part of the defendant, that he was the

The Seneca Woollen Mills v. Tillman.

lawful owner of the premises, granted to the company, and had a good and perfect right to convey the right of using and discharging the water as therein granted. It also contained the usual general covenant of warranty. The company subsequently acquired the title to four-sixth parts of the privilege of using the water, for the two runs of stones, which had previously been granted by the defendant to D. W. Forman; and an inchoate right to the other two-sixth parts of that privilege, under a sheriff's sale thereof, but the time of redemption as to those two-sixths had not expired at the time of filing the bill in this cause. The bill, after setting out the deed of the defendant to the company, and the various conveyances under which they claimed the water power previously granted to Forman, alleged that at the time of the conveyance to the company, by the defendant, he was the owner of sufficient water power on the south side of the Seneca river, at that place, to propel at least five run of millstones, with the necessary machinery, at all times, and in all stages of the water. It also alleged that, by his deed the defendant intended to grant to the company a sufficient power to propel five runs of millstones; and that he alleged and pretended, before and at the time the deed was given, that he owned, and had, and held, sufficient water power to propel twenty runs of such millstones; and had a good right to convey the same; that at the time of the conveyance by him, to the company, his saw mill had but one saw, and required water power only for one saw, but that he had subsequently put in a second saw, and the necessary machinery attached thereto, whereby the said saw mill required double the quantity of water; that the defendant now used, for the said saw mill, water power sufficient to propel six or seven runs of millstones, and an additional power for the purpose of running a circular saw, &c. and that he also permitted the waters to leak through his flumes and run to waste; by means whereof the machinery of the complainant had not sufficient water to propel it, at times, for want of the water power to which the complainant was entitled, under the conveyance from the defendant, and under the prior grant to Forman.

The Seneca Woollen-Mills v. Tillman.

The bill claimed that the company was not only entitled to the exclusive use of four-sixths of the water power originally conveyed to Forman, but also to the exclusive right to water sufficient to propel five runs of flouring millstones and the necessary machinery, before the defendant was entitled to use any of the water power, when from the state of the stream there was not more water than was necessary to propel seven runs of stones. And the injunction which the defendant sought to have dissolved or modified, had been allowed upon that principle, and protected the rights of the complainant to that extent.

*J. Maynard*, for defendant. The complainants, in their bill, rest their whole case upon the construction which they put upon the defendant's deed. And the whole gravamen of the bill and the requirements of the injunction are based upon this construction. We insist this construction is erroneous. The deed does not grant five runs of water power in preference to the part retained by defendant, but only a five run power to be used upon an equality with three runs; these five and three runs, (equal to eight runs,) being entitled to preference over the residue owned by the defendant. The complainants' bill does not make a case entitling them to the relief prayed for, or to any relief whatever; 1. Because they claim an exclusive right, when their right is upon an equality with defendant. 2. Because the grant is conditional, to use the water in a certain manner; and it is not shown that it is used in that manner. The bill does not show that defendant is about to do any new thing, but only that he claims to enjoy a privilege which he always has enjoyed. Again; the complainants do not show themselves in the undisturbed possession, nor that a remedy at law would be unavailable; or that they would suffer any great or irreparable injury, without the interposition of this court. It does not appear by the bill, that defendant uses any greater portion of the river, or of the half of the river belonging to the south side, after deducting the amount claimed by complainants, than he owns; or that the one half of the river is insufficient to supply all that

complainants and defendant both use, or wish to use. The injunction gives the complainants possession of what they never have had possession of before. It is, in this respect, an ex parte writ of execution, before judgment. The complainants do not show that the 1⅓ run purchased from Bascom, Stout & Gallagher, is the same, or part of the same two runs, conveyed by defendant to Forman, or that Forman's title has passed over to complainant. In *Vandenburgh* v. *Bergen*, (13 *John. R.* 212,) it is said by Platt, J. " The right in a stream is indivisible : a severance would destroy the rights of all."

*D. Cady,* for complainants. The bill alleges the use of water, by Tillman, in violation of complainants' rights, and of his deed. And it makes out a case of great and irreparable loss, continuing damage, &c., and shows an urgent necesssity for an injunction. This is not a case where rights must be first settled by a suit at law. The questions do not arise under usage, or possession. They are the result of grants ; and perhaps a question as to intention arises under the defendant's deed, which can only be settled in equity, in case, upon the face of the deed, our construction should be questioned.

The legal effect of the defendant's deed is this—it grants five runs, part and parcel of eight runs to be used in common with the three runs that make up the balance of the eight runs, subject to two runs that the grantor had before conveyed. The simple question is, suppose the grantor had not, at the time of the grant, the five runs and the three runs, but only a part thereof, on whom does the deficiency fall? We say the grantor. If there are not eight runs, five runs cannot run in common with three runs. The deed assumes there are eight runs, and professes to grant five of them. The construction of such a grant is of universal importance. A grantor conveys a part of a whole ; the part granted exists, but the remainder of the whole does not exist. Is the grant destroyed or limited because the part not granted does not exist? Would not such a construction be absurd? Suppose A. grants to B. five eighths of one hundred acres of land, to be used in common with the re-

The Seneca Woollen Mills *v.* Tillman.

maining three eighths, and the grantor in fact only owns the five eighths. Will it be contended that the grantee will not take the five eighths? But to make the case still stronger—if A. sells to B. one run of water power, to be used in common with a like run owned by the grantor, and it should turn out the grantor owned but one run in all, would he sell half a run, or a whole one? But give the defendant the strongest construction he can ask, and the same consequences follow. Suppose he only grants five eighths of the power mentioned, then what does he grant? Why clearly five eighths of eight runs, which is five runs. But take the defendant's side of the case— on the assumption that there is not the two runs, and five runs, and three runs, he wants to limit his grant to less than five runs. How does he do it? He can only do it by saying that he granted such a part of what there was, to run in common with the remaining part of the whole. The defendant asks to have the qualification, in the use of the five runs with three runs, in case of deficiency of water, destroy the grant; so as, by construction, to bring into existence a right that the deed does not claim. And again, to destroy the grant, to give effect to what is not granted, to qualify the title sold by what is not sold—to say the five runs in common with three runs, means two runs in common with one run—to say if the grantor had not the right to sell five runs in common with three runs, the grantees shall suffer though he had the five runs that he did grant. The qualification, to give preference, where there is in fact the two runs and five runs and three runs, is good. For this purpose it is valuable, and for every other purpose it is void.

THE CHANCELLOR. Upon the hearing of this motion, I came to the conclusion that the counsel for the complainants, and the officer who allowed the injunction in this case, were under a mistake as to the extent of the right in the water power to which the corporation was entitled, under the deed of June, 1844. After a more full examination of the question, I see no cause to change the opinion I then expressed. It is true the bill charges that before, and at the time of, the execution of that

The Seneca Woollen Mills v. Tillman.

deed, the defendant alleged and pretended that he had sufficient water power to propel twenty runs of stones. But that was a mere matter of opinion, as to the extent of the surplus waters of the river, beyond what should be wanted, for the use of the state, and to propel two runs of millstones, under his previous grant to Forman. And the officers and agents of the company must be presumed to have had the same means that he had of forming a correct opinion upon that subject. For it is not alleged, or pretended, that he concealed any matter of fact, within his knowledge, which was necessary to enable them to form a correct judgment as to the probable extent of the surplus water power, after supplying the state canal. From the very nature of the case, the extent of the water power belonging to the defendant, which both parties knew was one half of all the surplus waters of the upper level, except that previously granted to Forman, specified in the complainants' deed, was a matter of mere conjecture or calculation. The officers or agents of the company, therefore, instead of relying upon the defendant's estimate of the probable amount of surplus water which the river would afford, for the future, should have made their own calculations upon data which it was equally within the power of both parties to obtain. And if they were not convinced that there would be at all times water enough to propel at least eight runs of millstones, after satisfying the previous grant of water power to Forman, they should have contracted with the defendant for the exclusive right to so much of the surplus water, belonging to him, as would at all times be sufficient to propel five runs of flouring millstones, with the necessary machinery. It is indeed stated, in the bill, that the defendant, by his deed, intended to grant to the company a sufficient power to propel five runs of millstones. But it is not alleged that he intended to grant an exclusive power to that extent, or any exclusive power whatever, or that either party supposed the agents of the company were contracting for such an exclusive power. On the contrary, the deed shows that both parties intended that the power for five runs of stones, granted to the company, should not be used to the exclusion of all right to the use of the water, by the defendant,

when there was only sufficient to propel five runs after satisfying the previous grant to Forman. For it appears by the deed itself, as well as by the complainants' bill, that at the time of the execution of that deed, the defendant had a saw mill which was supplied with water power from the surplus water then belonging to him. And the grant of water power for five runs of stones, to the company, expressly declares that the water power, thus granted, is to be drawn, used, and enjoyed, *upon an equality of right* with three other like runs of millstones, to be used by the defendant and his heirs and assigns. The only exclusive right, secured by the deed, is that the five run power granted to the company, and the three run power reserved to the defendant and his assigns, to be used upon an equality of right therewith, are to have preference in the use of the water, over the remaining water power belonging to the defendant, beyond the eight run power. There is no pretence that there was any mistake in drawing the deed, or that it was not made in conformity with the bargain actually made by the parties. And it is hardly possible to use language more clear and explicit, to show the intention of the parties that the grantees were not to have the exclusive use of the water, to the extent of a five run power, in case of a deficiency of water to propel eight runs, but that the defendant should have an equality of right, in reference to the three run power reserved to himself. I am bound to presume, therefore, notwithstanding the allegations in the bill, as to the intention and representations of the defendant, that at the time of the execution of this deed, both parties contemplated that, by reason of drought or otherwise, the surplus waters on that side of the upper level might not be sufficient to propel the whole of an eight run power of machinery, beyond the amount required to satisfy the previous grant to Forman ; and that the clause in question, in this deed, was inserted by them for the express purpose of restricting the grant to the complainants, in the event contemplated, so as to give to the defendant a right to participate in the water power, notwithstanding the grant of the five run power to the company.

The rights of the parties, therefore, under that deed and the

previous grant to Forman, are as follows. The two run power, previously granted to Forman, must be first satisfied. And so far as the company has acquired that water power, its right to use it is exclusive of the defendant. While the complainants therefore, or the owner of the other two sixths thereof, are in the use of that two run power, the defendant is not at liberty to use the water, or to suffer it to run to waste, so as in any way to interfere with, or impair, that right. After supplying that two run power, or so much thereof as the parties now owning it wish to use, according to their several rights therein, if there is not sufficient water on that side of the river, at the upper level, to propel eight runs of millstones, exclusive of the half of the surplus waters, or so much of that half as is actually used on the north side, the complainants and defendant are entitled to participate in such water equally, in the proportion of five parts to the former, and three parts to the latter. And in the estimate of the water power used by each, there must be included so much of the surplus water as is suffered to run to waste, by the negligence of the parties, respectively, or by their suffering the flumes, or other works which they are severally bound to repair, to be out of order.

Such being the rights of the parties, the bill shows that the defendant, at the time of the granting of the injunction, was using the surplus waters of the Seneca river, at the place in question, in a manner which was wholly inconsistent with the grant to the complainants, and the rights which such complainants had acquired under the previous grant from the defendant to Forman; and so as in a great measure to destroy the whole value of the use of the company's property. For the bill distinctly charges, that the water power derived under the grant to Forman, and the grant of the five run power, directly from the defendant to the company, is all that is necessary to propel the whole of its machinery, and is more than sufficient for that purpose. It also charges that the defendant uses, for his saw mill, a water power sufficient to propel from seven to eight runs of flouring millstones, with their machinery, exclusive of the water which he suffers to run to waste by leakages in his flumes,

gates, and other structures; and that he runs his saw mill, a great part of the time, both night and day. And the bill further states, that by this use and waste of the water, by the defendant, there is not sufficient water power left to the company to propel six and one-third run of stones; but on the contrary, for a large part of the time in dry seasons of the year, and in all seasons of drought, by such use and waste of the water, by the defendant, there is no water power left for the propelling of the machinery of the company, and at other times very little is left for that purpose, so that such machinery is frequently obliged to stand still for want of water. If these allegations in the bill are true, the defendant is guilty of a clear and substantial infringement of the rights of the complainants. For, in no event has the defendant the right to use more than a proportional part of a three run water power until the machinery of the company is fully supplied to the extent of a six and one-third run power. Nor has he the right, by running his saw mill in the night time, in dry seasons, so to draw down the surplus waters of the upper level as not to leave for the company its proper proportion of the water, in reference to the number of hours in the day that the water power is used by each. But neither party has any right to complain that the other, by running his machinery in the night, obtains the use of water which would otherwise have flowed over the dam and been wasted; provided the water in the pond is not thereby drawn down so as to impair its use during the ordinary hours of labor of the other party.

The objection of the defendant, that the complainants are not stated to be in the enjoyment of the right claimed, and that such right has not been established in a suit at law, is not well taken. Here the complainants claim under a recent conveyance from the defendant himself; and if the machinery of the company was now for the first time ready to be put in operation, by the use of the water power granted for that purpose by the defendant, there is no principle upon which the complainants should be required to bring a suit at law, for diverting the water, in violation of the express provisions of the grant, before applying to this court for relief. It is only where the right of the com-

plainant to the privilege claimed admits of doubt, that the court requires him to establish his right at law previous to the granting of an injunction. Here is no fact to be tried at law, to establish the right of the company to a participation in the use of the waters in question, in conformity with the terms of the grant from the defendant, except the simple fact of the due execution of the deed; as to which fact there is no question raised.

Nor is the objection valid, that the grant of the use of the water was upon condition that it should be used in a particular manner, and that it does not appear it is so used by the complainant. The conveyance does indeed recite, that the grantees intend to draw and use the water power upon lands which do not belong to the grantor, and to discharge the same into the river under the canal, at a particular point below the dam. But that particular manner of using the water power granted is not made a condition of the grant. And this recital appears only to have been introduced in connection with the further grant of the right to enter upon the lands of the grantor, and construct and keep in repair a culvert thereon for the discharge of the waters into the river, after they shall have been used by the grantees. If the company, therefore, can use the water power granted, and discharge the waste water into the river at any other place, without crossing the lands of the defendant, or interfering with the rights of the public or of individuals, I see nothing in the terms of this conveyance to prevent the complainants from using the water power granted in that manner. The expression in the deed, that the water power intended by the grant is the right of drawing, using and occupying, and enjoying forever, for hydraulic purposes, sufficient of the waters belonging to the defendant to propel five runs of mill stones used for flouring wheat, with the necessary machinery, by the most approved wheels, evidently refers to the measure or mode of estimating the amount of water power granted. And it does not require, as a condition of the grant, that such water power shall be actually used and applied to the propelling of the stones and machinery of a flouring mill, and by a particular kind of wheels. The grantor undoubtedly

knew the water power purchased of him was intended to be used, not in a flouring mill, but in a manufactory of woollen goods; as the name of the corporation, to which the conveyance was made, indicated. But as the quantity of water necessary to propel a run of stones, in a flouring mill, with the necessary machinery, with a given head of water, was a matter of easy calculation, that specification was resorted to, by the parties, as the most certain and definite measure of the water power intended to be granted to this woollen manufacturing corporation. It may also be observed, that the same or similar language is used in this deed, to measure the quantity of water power which the defendant reserved the right to use in common, or in equality of right, with the water power granted to the company; though the water power thus reserved to himself was unquestionably intended, for the present at least, to be used for the purpose of propelling the machinery of his saw mill.

The injunction was therefore proper, so far as it restrained the defendant from using the water power, or suffering it to run to waste, to the prejudice of the complainants' rights as before declared. And to that extent the injunction must be retained until the coming in of the answer. But the injunction, as granted, was much too broad. It must, therefore, be modified, if that has not already been done pursuant to the directions given at the close of the argument, so as to leave the defendant in the full enjoyment of his rateable proportion of the water power as above declared.

And neither party is to have costs as against the other, upon this application.