THE PENNSYLVANIA COAL COMPANY *v.* THE PRESIDENT, MANAGERS, &c., OF THE DELAWARE AND HUDSON CANAL COMPANY.

SPECIFIC PERFORMANCE. Courts of equity will not entertain jurisdiction to compel the specific performance of a contract, when the plaintiff can obtain adequate redress by his action at law for damages. ·

When the plaintiffs' rights cannot be protected or enforced at law except by numerous and expensive suits, equity may interpose to give the party redress by injunction or specific performance; but in such cases, generally, the plaintiff must first establish his right at law before a court of equity will interfere.

THIS action was brought by the plaintiffs against the defendants to compel a specific performance of certain covenants entered into between the defendants and plaintiffs in July, 1851, for the passage of boats of the plaintiffs, laden with coal, in and along the canal of the defendants.

The plaintiffs were created a body corporate by the legislature of Pennsylvania, in 1838, for the purpose of mining coal and the transaction of the usual business of companies engaged in the mining, transporting to market and selling coal.

The defendants were created a body corporate by the legislature of this State, in 1823, for the purpose of constructing a canal between the Delaware and Hudson rivers, and the said corporation proceeded to and did construct a canal between said rivers, and the said defendants have ever since been in the receipt of tolls from boats navigating said canal.

In 1851, the plaintiffs being engaged in the mining of coal in the State of Pennsylvania and transporting the same in their own boats on the defendants' canal from Hawley, in the county of Wayne in said State, to the terminus of said defendants' canal at Eddyville, in the county of Ulster, made and entered into an agreement in writing, under the hands of the proper officers of said companies and the seals of said companies, wherein and whereby the defendants, for a valuable consideration, covenanted and agreed to and with the plaintiffs at all times thereafter to furnish to any and all

boats owned or used by the said plaintiffs for the purpose of transporting coal, entering the said canal, or by railroad connecting with the said canal at or near the mouth of the Wallenpaupack river, or containing coal, entering as aforesaid, belonging to or transported by or on account of the said plaintiffs, or containing coal entering as aforesaid, in which, or the transportation of which, they may be in any manner interested, or the transportation of which the plaintiffs might authorize or require, all the facilities of navigation and transportation which the defendants' canal shall afford when in good navigable condition and repair, to boats owned or used by any other company or persons, or belonging to or used by or containing coal transported by, for or on account of said company, its successors or assigns, the defendants charging and collecting a toll on coal transported in pursuance of said agreement, provided for therein.

It would seem that the parties had acted under this agreement from the time it was made in 1851, down to the time of the commencement of this action in August, 1854. At which time it was claimed by the plaintiffs that the defendants violated their agreement in this, that they refused to permit the empty boats of the plaintiffs arriving at the lock at Eddyville, to pass through said lock in the order of their arrival, but compelled them to pass alternately with the boats owned by the defendants, although such boats might have arrived after the plaintiffs' boats, and also postponed the passage of the plaintiffs' boats through the lock, until all transient boats had been passed through, if such transient boats arrived before all of plaintiffs' boats were passed through.

The plaintiffs in their complaint set out the aforesaid provision of said contract, and alleged its breach as stated, and that damages had accrued to said plaintiffs thereby, and prayed judgment that the defendants might be enjoined from violating said contract, and that they be compelled specifically to perform the same. A temporary injunction was issued pursuant to the prayer of the complaint.

The defendants in their answer admitted the making of the contract, but denied any breach of it.

The temporary injunction was vacated by the justice of the Supreme Court, who granted it on the ground that the case made by the complaint did not authorize an injunction, and also because the whole equity of the complaint was denied by the answer.

The cause was brought to a hearing before Justice GOULD at the Ulster Circuit, in February, 1856.

On the trial it was proved by one Longyear, that he was in the plaintiffs' employ in 1854, and that it was his business to see the plaintiffs' boats were locked in order through the lock at Eddyville, which connects the Delaware and Hudson canal and the Rondout creek. The plaintiffs had, during that season, nearly 500 boats running on said canal. The plaintiffs' boats were towed up to the lock from Port Ewen on the Hudson river — the defendants' boats from Rondout, by small steamboats owned by the several companies. Each steamboat would tow up from five to thirty-five canal boats at a time — as many as happened to be ready to go up. If a tow of defendants' boats arrived after a tow of plaintiffs', and the two tows were waiting lockage, the defendants would immediately allow one of their boats to be locked through and then one of the plaintiffs' boats, and so on alternately, and this was done without regard to the time which had elapsed between the arrival of the different tows. If a tow of defendants' boats came up while a tow of plaintiffs' boats were partly locked through, they would lock the remainder through alternately. It required about ten minutes to lock a boat through. The longest time he ever knew a boat of the plaintiffs detained by the rule of alternating was about one day. In two instances, he knew a loaded boat of defendants to pass through the lock at Eddyville, go down to Rondout, reload and come back to the lock and be locked through, going up, before a boat of plaintiffs which had been waiting at the lock to be locked through, going up, when the plaintiffs' boat went down. The plaintiffs had, that season, about 150 more boats running on the canal than the defendants.

On cross-examination, the witness testified, that the boats coming down were locked through as they arrived. If plain-

tiffs' tow arrived before defendants' were all locked through, the defendants would commence alternating the passage of the several boats as before stated. Transient boats had a different steamer to tow them up. When they arrived they were immediately locked through, and as they arrived. No distinction was made in locking up between defendants' and plaintiffs' boats. At the time the defendants' boat was locked down, discharged its cargo and returned before plaintiffs' boats were locked through, there was some break on the canal; the plaintiffs' boat was locked up in its turn, pursuant to the foregoing order of locking. He had never known a boat of the plaintiffs passed through down, whilst a boat of defendants lay there waiting to be locked up, or the former to be locked through up before the latter.

On direct examination resumed, the witness testified, that when there were at the lock ten boats of the plaintiffs, and after them say ten transient boats, and after them ten boats of the defendants came up, the defendants' would first lock through, five of the plaintiffs' boats alternately with five of the defendants', and then all the transient boats were locked through before any of the others.

The plaintiffs' counsel having rested, the defendants' counsel moved to dismiss the complaint, on the grounds:

1. That the acts of the defendants did not amount to a breach of the agreement, or entitle the plaintiffs to the relief demanded.

2. The plaintiffs have not shown facts sufficient to entitle them to recover.

3. They have a perfect remedy at law, and therefore the complaint should be dismissed.

The court granted the motion and dismissed the complaint. To which ruling and decision the plaintiffs' counsel excepted.

The plaintiffs then appealed to the General Term of the third district, and that court affirmed the judgment. And from that judgment the plaintiffs appeal to this court.

*J. K. Porter,* for the appellants.

*A. J. Parker,* for the respondents.

MULLIN, J.   Two questions only are presented for consideration on this appeal.   These are: 1st. Whether the contract between the parties had been violated.   And if it has, then, 2d. Is the plaintiffs entitled to a specific performance of the contract.

1. Have the defendants broken the contract?

The defendants obligated themselves by the agreement to furnish to the plaintiffs' boats all the facilities of navigation and transportation which their canal should afford, when in good and navigable condition and repair, to boats owned or used by any other company or person, or owned or used by the defendants for the transportation of coal.

The contract, it will be perceived, is not, as the plaintiffs' counsel seems to construe it, that the defendants will afford to the plaintiffs' boats all the facilities of navigation that the canal, when in good order, shall afford, but it is to furnish all the facilities to the plaintiffs that the canal, when in good order, shall afford to any other person's or company's boats, including defendants' own boats.

Before the plaintiffs can insist that the contract has been violated as to its boats, they were bound to show what facilities were afforded by the canal, when in good order, to other boats.   No difference is shown to have been made between the plaintiffs' boats and those of other owners, in the facilities extended in the business of navigating the canal.

The defendants, as owners, had the right to prescribe such reasonable rules and regulations for the government of vessels passing along their canal, as their directors deemed best calculated to promote their own interests and the interests of those engaged in navigating the canal.   Such regulations must embrace the order in which boats should pass through the locks.   Such regulations, while resting largely in the discretion of the officers of the company, must, nevertheless, be reasonable.   Now, it appears that all boats passing to the Hudson river, were locked through the Eddyville lock in the order of their arrival at such lock.   This regulation is not complained of; but it is insisted that the same rule should be observed in locking up through the same

lock the empty boats, and that the omission to do so is a breach of the agreement. It is claimed that the detention of plaintiffs' boats, if they first arrive at the lock, until boats of the defendants, subsequently arriving, are locked through alternately with plaintiffs', causes unreasonable delay, and is an unjust detention of the plaintiffs' boats.

When the plaintiffs' boats arrive at the lock first, it does seem to be oppressive to require any of them to be delayed until the boats of other persons, subsequently arriving, are locked through. But it must sometimes happen that the defendants' boats arrive first, and if they are delayed until the plaintiffs' boats, subsequently arriving, have been passed through, the plaintiffs have the benefit of the same rule which operated injuriously when their boats were first at the lock. While the rule is uniformly and impartially applied, it is difficult to see how it operates to the prejudice of the plaintiffs rather than to that of all others navigating the canal. While it is true that the plaintiffs owned the largest number of boats, it does not follow, nor is it proved, that their boats are uniformly first at the lock on their way back to the mines. If they are not, then they must take the delay imposed upon them by the regulation in compensation for the benefit derived from passing alternately with boats arriving at the lock before those of the plaintiffs.

It does not appear that the regulation complained of was a new one. It may have been, and in the absence of both allegation and proof to the contrary, I think we are bound to presume that it had been in force from the making of the contract; and if so — if the plaintiffs had acquiesced in it for so long a time — it is somewhat late to complain of it.

If the regulation was designed to embarrass the plaintiffs, it is difficult to see why it should not have been applied to the boats coming to as well as to those going from the Hudson. There would seem to have been some reason for the discrimination, but what it is, is not disclosed by the case.

A reason is suggested by the respondents' counsel which would seem to account for the regulation, and is probably the true one, and that is, that as but a single boat, or at

most but a very limited number of boats is being laden at the same time, by either party, it is no cause of delay that the empty boats arrive one after the other, at intervals of twenty minutes; for if twenty or thirty boats arrive at one time, they must be detained until those ahead are loaded, and the result would be, that while nothing would be gained by the plaintiffs, considerable time would be lost by the other boats compelled to wait until all of plaintiffs' boats had passed through. By the regulation, it would seem that plaintiffs' boats are passed up as fast as they are required to be loaded, and that unnecessary delay to the defendants' boats is avoided.

A preference seems to be given to transient boats over those of either the plaintiffs or defendants. In what business these transient boats were employed, or their number, or who were the owners, does not appear. But it is probable that they were boats engaged in the transportation of property other than coal, and that the number was small compared with the number owned by the plaintiffs or defendants. If these conjectures are correct, they would account for the preference given to such boats in passing the lock. It would be very harsh to require a man, owning a single boat, to be detained until thirty or forty boats, arriving ahead of him, were got through the lock. And, when a preference was given to one such boat, it became necessary to extend it to all, and it does not appear that the preference delayed the loading of any of the plaintiffs' boats. This delay, and not that at the lock, would be the cause of damage of which the plaintiffs could justly complain. If the boats, on arriving at their place of destination, would have been detained as long before being loaded as they lay at the lock, it is not perceived how the plaintiffs could be damnified.

In a word, the regulation is one that the defendants had the right to make; it is not shown to be either unreasonable or unjust, nor that it has been the cause of any real injury to the plaintiffs. It seems to have been acquiesced in for a long time, and no reason is perceived why it should now be repudiated or annulled.

2. But if I am wrong in supposing the contract not to have been broken by the defendants, the question remains to be considered, whether the plaintiffs are entitled, on the case made, to a specific performance of the contract.

There is no doubt as to the power of a court of equity to decree the specific performance of a contract in relation to personal property. (2 Story's Eq., § 716 to 731.)

But, as in general, the injured party can be fully indemnified for any loss sustained by a breach of the contract relating to personalty, by damages which may be recovered in a court of law, courts of equity refuse to entertain jurisdiction or to compel performance in that class of cases. (Story's Eq. Jur., 717; *Woodward* v. *Harris*, 2 Barb. S. C., 439; *Phillips* v. *Berger*, 8 Barb., 527.)

When, however, the case is one in which the party cannot be made good by damages, and strict performance of the contract can alone protect him against loss, then the court will entertain the cases and grant the relief demanded. (Story's Eq. Jur., § 718; 8 Barb., 527.)

The damages sustained by the plaintiffs by reason of the detention of their boats, are either the loss of time and expenses of the hands employed on the boats, and the value of the use of the boats, or the loss of the profits which might have been earned on coal which might, but for the detention, have been sent to market and sold. When the length of the detention, and the number of boats and men are ascertained, there would be no difficulty in ascertaining the amount of damages which the law will allow to the plaintiffs.

When it is settled by the verdict of a jury that the defendants have violated the contract in applying to the plaintiffs' boats the regulations complained of, and that the detention occasioned by it is unlawful, that question will not be again open to litigation, and the plaintiffs will thereafter be only required to make proof of the damages sustained; and, unless the damages for which the defendants are thus made liable are much less than the benefit derived from the enforcement of the regulation and the costs of the litigation, the

defendants will be compelled to abandon the regulation and permit the plaintiffs' boats to pass the locks in the order of time of their arrival.

There can be no difficulty in obtaining a full compensation for damages in an action at law, if it can be said in any case damages compensate for a breach of contract.

As the contract in question is without limitation as to duration, a persistent refusal to perform the contract according to its true intent and meaning would involve the parties in a great number of suits at law, and, consequently, in very great expense and trouble.

When a right can only be adequately protected or enforced by numerous and expensive law suits, courts of equity have interposed their jurisdiction, and have given the party redress by injunction, specific performance, or other adequate relief, in order thereby to prevent litigation and the mischief which results from it. (1 Story's Eq., § 64 [a], 64 66, 67.)

As jurisdiction on this ground was more frequently invoked in cases of private nuisance than any other, it was made a condition precedent to the right to file a bill, when the right claimed was doubtful, that the complainant should have established his right at law. (*Olmstead* v. *Loomis*, 6 Barb., 152; Story's Eq., § 925 to 930; *Van Bergen* v. *Van Bergen*, 3 Johns. Ch., 282; *Reed* v. *Gifford*, 6 id., 19; *Fisk* v. *Wilbur*, 7 Barb., 395; *Seneca Woolen Mills* v. *Zillman*, 2 Barb. Ch., 9.)

It seems to me that this is a case in which the plaintiffs' right should be settled at law before coming into equity for relief. A court of law is the appropriate forum in which to obtain relief. And as his right to relief here involves the determination of a question which a jury should pass upon, I think if the case is one which a court of equity should ever entertain, it should not be done until the plaintiff has recovered in an action at law.

On the facts found in this record, I entertain no doubt but the plaintiffs were rightly nonsuited, as well upon the ground that no breach of the contract was proved, as

upon the ground that the plaintiffs' remedy was at law and not in equity.

The judgments of the General and Special Terms should be affirmed, with costs.

DAVIES, J. The defendant is the owner of a canal extending from tide water on the Hudson river, to the interior of the State of Pennsylvania. The plaintiff is the owner of extensive coal mines, bordering on the defendant's canal, which it mines for transportation to market. For such purpose, it is the owner of a large number of canal boats navigating the defendant's canal. By an agreement or deed, made and entered into between the parties to this action, dated 29th July, 1851, the defendant covenanted and agreed with the plaintiff, to furnish to any and all boats owned or used by the plaintiff for the purpose of transporting coal entering the said canal, by railroad connecting with the said canal, at or near the mouth of the Wallenpaupack river, or containing coal, entering as aforesaid, belonging to or transported by or on account of the plaintiff, in which coal, or the transportation thereof, the plaintiff might be in any manner interested, all the facilities of navigation and transportation which the said canal should furnish, when in good, navigable condition and repair, to boats used by any other company or person, or belonging to or used by or containing coal transported by or for or on account of the defendant. The plaintiff alleged a breach of said contract or agreement in this, that the number of boats employed by the plaintiff in the transportation of coal upon said canal, was greater than the number employed by the defendant therein, and that the boats of the plaintiff, and those employed by it, made their trips in much shorter time than the boats of the defendant, and therefore the act of the defendant in neglecting and refusing to pass the boats of the plaintiff through the locks on said canal in the order in which they arrived at the locks respectively, but delaying them until one of the boats of the defendant, or of some individual, arriving after the plaintiff's boat at such lock, had been passed, was highly injurious

and of great detriment to the plaintiff. The plaintiff prays judgment, that the defendant may be decreed and adjudged to use and manage said canal and the locks thereon, in such manner as not to impede, hinder or delay the boats of the plaintiff navigating the said canal, and used for the purpose of transporting coal entering said canal at or near the mouth of the Wallenpaupack river, or containing coal, and entering as aforesaid, belonging to or transported by or on account of the plaintiff, and may be restrained from giving the preference of passage through any lock thereon to some other boat than the plaintiff's, although the latter arrived first at such lock, and that the defendant might be decreed specifically to perform its said agreement with the plaintiff.

The cause was tried by the court without a jury, and the court found as matter of fact, that the plaintiff had not proven a breach of the contract, and the court thereupon gave judgment for the defendant, denying the relief asked for, and denying the injunction prayed for and dismissing the complaint with costs. The General Term, on appeal, affirmed this judgment, and the plaintiff now appeals to this court.

The only ground upon which the plaintiff could invoke the aid of a court of equity to decree a specific performance of the contract, and to restrain the defendant from its violation, was that there had been a breach of the contract and a violation, or a threatened violation of it. This was the foundation of the plaintiff's edifice, the corner stone upon which it rested. The finding by the court, that no breach or violation of the contract had been proven, entirely demolishes all claim of the plaintiff to any equitable relief. No threatened violation of the contract is alleged or pretended, and it follows that the judgment of the Supreme Court on this state of facts was correct, and the same should be affirmed.

Judgment affirmed.