EMPIRE ENGINEERING CORPORATION, Respondent, *v.* CORNELIUS J. MACK et al., Appellants, Impleaded with Others.

Interpleader — payment of money into court — such payment will not discharge party from liability when amount, as well as ownership, of debt is in dispute.

1. A plaintiff may be discharged from liability by paying ·the amount of his debt into court, when the amount is not in dispute, when the conflicting claims are to substantially the same debt, when plaintiff stands indifferent between the rival claimants, when the only question in the case arises from the doubtful rights and conflicting claims of the several defendants as between themselves and the real parties in interest are the defendants; but when the amount of the fund is in dispute and plaintiff does not stand indifferent, the action of interpleader cannot be maintained.   (Code Civ. Pro. § 820a.)

2. In this action the plaintiff and the adverse claimants, the defendants who appeal herein, dispute the total amount due and payable by plaintiff.   Hence, it cannot be maintained as an action of interpleader.

3. No elements of an equitable nature exist merely because several persons have separate claims against plaintiff.   Hence, it cannot be sustained as "in the nature of" an action of interpleader or as a bill of peace to quiet unnecessary litigation, or on general grounds of equitable jurisdiction.   (*Board of Supervisors Sar. Co.* v. *Deyoe,* 77 N. Y. 219, 226, distinguished.)

*Empire Engineering Corp.* v. *Mack,* 158 App. Div. 889, reversed.

(Argued December 14, 1915; decided January 25, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 14, 1913, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was designated in the complaint as an action in the nature of interpleader. Plaintiff alleges that its liability to all defendants is not in excess of $874.18 and that two of the defendants have brought

actions claiming more than $1,500 in excess thereof and that other defendants threaten suit. Defendants, appellants, in their answer deny that they have claims against any particular fund, but that the amounts claimed by them are due and owing from plaintiff. The allegations of the complaint are substantially followed in the findings signed by the trial justice in favor of the plaintiff, upon which judgment was entered and, upon appeal to the Appellate Division, was unanimously affirmed. The court found that the amount of the fund is in dispute and that the defendants claim that it is greater than plaintiff concedes. The facts as found are voluminous. Briefly summarized they are as follows:

The plaintiff, a. corporation, was engaged as a contractor in the construction of a portion of the barge canal. Between October 1st, 1908, and July 1st, 1909, one McFadden, an independent contractor, under an agreement with plaintiff, was to use the shanties of plaintiff and to make all repairs and additions thereto necessary, such improvements to belong to plaintiff. . McFadden was to board and lodge laborers in the employ of plaintiff, and the latter, to the extent that it owed wages to each laborer, was to collect the amount of such laborer's board money and pay it to McFadden, less ten per cent, to be retained as compensation by it for the privilege to McFadden and its services in accounting.

Two sub-contractors of plaintiff, Moran and Burke & Glenn, had a like agreement with McFadden as to the retention of wages of laborers and payment of board bills.

The agreement between plaintiff and McFadden terminated July 1st, 1909, and all dealings between them to and including the month of March had been settled.

Prior to July 1st, 1909 (the particular time is not stated), there was due from the sub-contractors to McFadden for money retained out of the wages of laborers, as follows: from Moran $285.10, from Burke & Glenn $548.54, which indebtedness plaintiff assumed and agreed to pay to

McFadden. On July 1st, 1909, plaintiff was indebted to McFadden for money retained from employees' wages on account of board as follows: For April, $1,205.67; for May, $460.94, and for June $276.45, a total of $1,943.06, which amount, with the indebtedness assumed by plaintiff to McFadden of $833.64, made its indebtedness to McFadden July 1st, 1909, the sum of $2,776.70.

McFadden by orders in writing, delivered during the month of May, directed plaintiff to pay $364.61 out of the moneys in its hands due from Burke & Glenn, and $153.60 from money due him by Moran, and $107.70 from money due from the plaintiff. In addition the plaintiff paid to the sheriff of Niagara county $800 out of moneys in its possession, by virtue of an attachment levied thereon in an action brought in the Supreme Court against McFadden.

After the receipt by plaintiff of the orders stated, and the payment to the sheriff of Niagara county, there remained in the accounts, if treated separately, the following amounts: Burke & Glenn's, $183.93; Moran's, $131.50, and plaintiff's $1,035.66. The trial justice found that against the Burke & Glenn account McFadden gave an order for $84.30, but the date of the same, or of its delivery to plaintiff, or date of payment of same as made, is not stated in the findings.

June 2d McFadden gave to the appellant Home Bread Company two several orders on the plaintiff, which were shortly thereafter served on it (the date of delivery is not otherwise found), one for $183.47, payable "out of any money or moneys now due or to become due for labor and board furnished on contracts 64 and 66, Barge Canal, during the month of May," and one for $365.22 payable " out of any money or moneys now due or to become due for labor and board furnished on contracts 64 and 66 during the month of April." The plaintiff paid on the last above-named order $147.37 (date not given), and upon the first above-mentioned order prior to June 12th, had paid

$8.32. On June 12th it gave to the Home Bread Company its check dated that day for $183.47, the amount of the order, but before the check was paid the plaintiff stopped payment on the same for the reason that the check was inadvertently given in excess of the amount of said order, and there were other orders outstanding against the funds in its hands aggregating largely in excess thereof, and there remains unpaid on said order $175.15.

August 2d, 1909, the Home Bread Company commenced an action in the Supreme Court to recover upon the $183.47 check and the $365.22 order, which has been stayed pending the determination of this action. As matter of law, the trial justice held that upon payment by plaintiff into court of the amount found in its hands it was to be relieved from all liability to the Home Bread Company, and that the action brought by the latter company was perpetually stayed, and said company was restrained and enjoined from bringing any action or actions against the plaintiff.

June 1st, 1909, McFadden gave an order on plaintiff, dated that day, and served on plaintiff June 14th, directing plaintiff to pay William H. Earl the sum of $105 out of any moneys due to McFadden for the May and June board bills, and no part of said sum has been paid, although Earl has filed a lien against the plaintiff, and by the conclusions of law found by the court the plaintiff was to be relieved upon payment into court of any liability to Earl. Earl has not appealed from the judgment so entered.

June 2d McFadden gave to the appellant Mack an order on plaintiff to pay said Mack $500 out of the moneys in its hands coming to McFadden, and on June 7th gave to said Mack two orders, one for $100 payable from the moneys due McFadden from the Burke & Glenn account, the second one for $403.75 from money due McFadden from the Moran account, the total of such orders being

$1,003.75.  The three orders were served on the plaintiff soon after the dates thereof, but the exact date is not given.  August 2d, 1909, Mack commenced an action against the plaintiff in the Supreme Court to recover upon the order or assignment of June 2d, and to recover the remainder of his account against plaintiff, embodying the other two orders, which action was stayed and the trial justice in this case determined that upon payment by plaintiff of the moneys in its hands into court, plaintiff be relieved from all liability to the defendant Mack evidenced by the three orders or assignments, except any liability that plaintiff may have incurred to Mack by reason of any independent obligation to pay him for merchandise, and that the action brought by Mack be perpetually stayed to the extent represented by the three orders aggregating $1,003.75.

One Ransom was a creditor of McFadden, and McFadden gave him an order dated June 9th, 1909, for $400, payable out of the May and June board bills, no part of which has been paid and for which Ransom filed a lien, the date of the filing of which is not given.  Ransom was restrained by the judgment from further proceeding upon his part and he has not appealed in this case.

The court found that during the performance of the agreement, which was prior to July 1st, 1909, McFadden purchased of one Pease lumber of the value of $145.83 which McFadden used in improving and repairing the shanties of the plaintiff under the terms of the agreement between plaintiff and McFadden, and for which McFadden never paid Pease.  The date of the sale of the lumber is not given, but the court found that after the abandonment of the agreement, July 1st, 1909, but at what particular time the court does not state, Pease was about to file a lien on said shanties unless the plaintiff paid for the lumber, and thereupon the plaintiff paid Pease $145.83 out of the moneys in its hands going to McFadden, and that it had a right to do so under the

terms of its agreement with McFadden, and said payment was valid and binding.

The court also found, as matter of fact, that during the performance of the agreement the appellant Fermoile delivered to the defendant McFadden goods and merchandise of the value of $113.83, for which Fermoile had filed with the comptroller of the state a lien against the plaintiff and that after the abandonment of the agreement, July 1st, 1909, several of the defendants filed liens with the comptroller of the state of New York against the payment of moneys under its barge canal contracts with plaintiff, based wholly upon obligations against McFadden, and plaintiff was obliged to and did release said liens by bonding the same so it could obtain its payment from the state, at an aggregate expense of $116.79 for attorneys' services and disbursements and surety company bonds, which it paid out of the moneys in its hands going to McFadden, and that it had a right so to do, and such payments were valid and binding. As to the dates of the filing of such liens or of the payments made by the plaintiff therefor, the findings by the trial justice are silent.

These two payments aggregating $262.62 were included in the aggregate of payments made by the plaintiff of $1,925.52 out of the sum of $2,776.70 leaving, as determined by the court, in the hands of plaintiff the sum of $851.18 belonging to said defendant McFadden, and that $851.18 is all that it owes McFadden or any one claiming through or under him, and as conclusion of law that the plaintiff could maintain the action to determine the rights and claims of the defendants to the money; that the plaintiff should pay into court, to the credit of the action, the sum of $851.18, with interest thereon from July 1st, 1909, to the time of such payment, less its costs to be taxed, and, upon such payment, the plaintiff be relieved from all further liability in this action, and the defendants be permitted to establish as between themselves their right to

the fund thus paid into court according to the findings and conclusions in this case.

At the close of plaintiff's case defendants, appellants, moved to dismiss the complaint on the ground that plaintiff had failed to prove facts sufficient to constitute a cause of action of interpleader, the amount of the fund being in dispute and they making no claim to any particular fund.

*Charles Hickey* and *George F. Thompson* for appellants. Appellants Mack, Fermoile and the Home Bread Company having brought actions against plaintiff as their primary debtor, and plaintiff having answered therein denying its liability, cannot avoid meeting that issue in a court of law by bringing a suit in equity claiming to be a stakeholder and interpleading appellants with other claimants who concede plaintiff's position to be that of a stakeholder as to them. (*U. S. Trust Co. v. Wiley,* 41 Barb. 477; *Southwark National Bank v. Childs,* 39 App. Div. 560; *Hanna v. Manufacturers' Trust Co.,* 104 App. Div. 90.) The action cannot be maintained because the different claimants are not claiming the same thing, · which is essential in interpleader actions. (*Bassett v. Leslie,* 123 N. Y. 396; *Hanna v. Manufacturers' Trust Co.,* 104 App. Div. 90; *Dorn v. Fox,* 61 N. Y. 264; *Freda· v. Montauk Co.,* 26 Misc. Rep. 199.) The action cannot be maintained because the amount due from plaintiff is in dispute. (*Dubois v. Union Dime Sav. Inst.,* 89 Hun, 382; *B. & O. R. R. Co. v. Arthur,* 90 N. Y. 234; *N. E. M. L. Ins. Co. v. Odell,* 50 Hun, 279; *Bernstein v. Hamilton,* 26 App. Div. 206; *Jackson v. Knickerbocker,* 49 App. Div. 107.) The action cannot be maintained because plaintiff does not stand in the position of an innocent stakeholder, but has voluntarily and for profit placed itself in a position to invite litigation. (*Debeau v. Rogers,* 2 Paige, 209; *Cromwell v. Am. T. & T. Co.,* 57 Hun, 145; *Marvin v. Elwood,* 11 Paige, 265.)

*Frank A. Abbott* for respondent. By reason of the facts pleaded and proved in this action the plaintiff was exposed to danger, vexation and loss from conflicting, independent claims, derived from a common source. (*Crane* v. *McDonald,* 118 N. Y. 654; *Dorn* v. *Fox,* 61 N. Y. 268.) This action was properly commenced and is maintainable to prevent multiplicity of suits and to determine the rights of the parties in a single action. (*Bd. of Suprs.* v. *Deyoe,* 77 N. Y. 226.)

POUND, J. The fundamental question is whether plaintiff may, in this action, on the facts as stated above, have the amount of its indebtedness to the defendant McFadden determined and then be discharged from further liability to any of the other defendants herein, based on any lien, order or assignment against such indebtedness, by paying the amount thereof into court. The trial court held that plaintiff was to this extent, and to this extent only, entitled to the relief asked for.

The plaintiff sought also to have all claims of the defendants Mack, Fermoile and the Home Bread Company against it, arising out of dealings with McFadden, determined in this action, although such claims were alleged by such defendants to be based in whole or in part on independent demands against plaintiff and, therefore, not to be confined to a participation in the McFadden fund. The trial court refused to restrain the prosecution of the action brought against plaintiff by Mack to recover on his demands, so far as the same was based on plaintiff's independent obligation to pay or to restrain Fermoile from bringing suit against plaintiff on a like claim, with the result that the purpose of the action has failed so far as it sought to obtain an adjudication that Mack and Fermoile had no claims against plaintiff except against the fund, or that the actions brought by them should be restrained. The trial court did not determine whether or not Mack and Fermoile actually had any enforcible

demands against plaintiff based on its independent obligation to pay but left that issue to be determined in their actions at law. The Home Bread Company is enjoined from maintaining its independent action against plaintiff and is thus limited to participation in the McFadden fund.

This action differs from the simple action of interpleader in that the plaintiff and the adverse claimants, the defendants who appeal herein, dispute the total amount due and payable by plaintiff. It has repeatedly been held that when the amount of the debt is not in dispute, when the conflicting claims are to substantially the same debt, when plaintiff stands indifferent between the rival claimants, when the only question in the case arises from the doubtful rights and conflicting claims of the several defendants as between themselves, the real parties in interest are the defendants. Plaintiff may then be discharged from liability by paying the amount of the debt into court, but when the amount of the fund is in dispute and plaintiff does not stand indifferent, interpleader will not lie. (*Crane* v. *McDonald*, 118 N. Y. 648, 654.) In *Pouch* v. *Prudential Insurance Co.* (204 N. Y. 281, construing Code Civ. Pro. § 820-a) the strict rules in actions of interpleader were held not to have been relaxed by the legislature by Laws of 1908, chapter 285, relating to such actions. It must, therefore, follow that this action cannot the maintained as an action of interpleader. The amount of the debt is in dispute and plaintiff does not stand indifferent.

It is urged that it may be maintained as an action "in the nature of" an action of interpleader, or as a bill of peace to quiet unnecessary litigation, or on general grounds of equitable jurisdiction. In an action in the nature of an action of interpleader, the plaintiff, as a rule, remains in the case to the end (23 Cyc. 29) and other elements *of an equitable nature and subjects of equitable jurisdiction, e. g.,* the foreclosure of chattel

mortgages, the priority of liens, etc., enter into consideration.  (*Ostrander* v. *Weber*, 114 N. Y. 95.)  Bills of peace usually will not lie until the legal right has been determined in law, and then only to prevent a multiplicity of oppressive suits where the questions are complicated and the litigation may be endless.  (*Penn. Coal Co.* v. *D. & H. Canal Co.* 31 N. Y. 91; *Hale* v. *Allinson,* 188 U. S. 56, pp. 72–74.)

Equitable jurisdiction does not necessarily depend upon an exact relation of the cause of action stated to some definite head of equitable relief, it is true.  Thus ANDREWS, J., said in *Board of Supervisors Sar. Co.* v *Deyoe* (77 N. Y. 219, 226): "The case presents the elements which justify the interposition of a court of equity. It may not be a case of interpleader strictly, or which meets all the definitions of a bill of peace,   *   *   *   but it combines, to a greater or less extent, elements of jurisdiction in each of these cases, and the action we think may be sustained without a violation of principle, and *without interfering with the substantial rights of the defendants.*"  In the case cited the county was threatened with suit by fifty-three persons claiming $138,631, on seventy-three notes which the complaint alleged were not legal nor valid debts against the county, except to the extent of $20,800.44.  By demurrer defendants, the note-holders, admitted that the liability of the county was limited to $20,800.44.  No such admission is in this case and it requires a vigorous imagination to see in the claims of the six defendants herein the threatened multiplicity of suits and unnecessary costly litigation which equity would seek by a bill of peace or otherwise to prevent.  " Generally speaking, a court of equity will not take cognizance of distinct and separate claims of different persons in one suit, though standing in the same relative situation."  (*Birkley* v. *Presgrave,* 1 East, 220, 227.)

Plaintiff cannot escape into equity jurisdiction when

relatively unsubstantial rights to equitable relief are balanced against the substantial rights of defendants to have the plaintiff's liability to them determined in law, each in his own action. As well, almost, might any plaintiff, sued or threatened with suit by a half dozen persons on any grounds arising out of the same transaction, bring his action to restrain them all upon payment into court of a sum to be determined in the suit, and compel them to have their rights determined in equity in a single action because "the prevention of a multiplicity of suits is a *very* favorite object of a court of equity." We should not overlook the fact that plaintiff has, out of a possible six actions, succeeded in restraining but four, and that the entire controversy between the parties is only partially disposed of, for the reason that the amount of the fund is not determined to be the only measure of plaintiff's liability. The inadequacy of equity to dispose of the controversy in a single action is thus apparent.

Questions of practice are not to be decided on principles of raw equity which conflict with precedent, nor are the substantial rights of parties to trial by jury to be sacrificed for mere convenience of debtors or courts. Equity will grant no relief herein for the reason that the remedies at law are adequate to the attainment of justice.

The judgment of the courts below should be reversed and the complaint dismissed, with costs in all courts.

WILLARD BARTLETT, Ch. J., COLLIN and CUDDEBACK, JJ., concur with POUND, J.; CHASE and CARDOZO, JJ., vote for affirmance; HOGAN, J., votes for reversal and new trial.

Judgment reversed, etc.