**UNITED STATES et al. v. SENTINEL FIRE INS. CO. et al.**

**No. 12513.**

United States Court of Appeals Fifth Circuit.

Aug. 13, 1949.

Rehearing Denied Dec. 2, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson, Ellis N. Slack, Helen Goodner, Sp. Assts. to Atty. Gen., Joseph E. Brown, U. S. Atty., Jackson, Miss., for the United States.

Daniel E. Breland, Weaver E. Gore, John G. Burkett, Jackson, Miss., for appellants Breland and Pyles.

John Harvey Thompson, Thomas H. Watkins, Jackson, Miss., for appellees.

Before HUTCHESON, SIBLEY, HOLMES, McCORD, and WALLER, en banc. (Judge LEE not participating.)

WALLER, Circuit Judge.

This interpleader suit, by Sentinel and six other fire insurance companies, was purportedly brought under the Federal Interpleader Statute, Sec. 41(26), Title 28 U. S.C.A., as amended January 20, 1936,[1]

---

1. Sec. 41 (26), Title 28, provides in part that:

"The district courts shall have original jurisdiction as follows:

\* \* \* \* \* \*

"(26) Original jurisdiction of bills of interpleader, and of bills in the nature of interpleader—

"Twenty-sixth. Of suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader duly verified, filed by any person, firm, corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of the value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if—

"(i) Two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy, or other instrument, or arising by virtue of any such obligation; and

and as supplemented by Rule 22(1) and (2) of Federal Rules of Civil Procedure, 28 U.S.C.A.,[2] against William Harold Davis, doing business as Radolite Manufacturing Company, the insured; J. C. Stennett, Receiver in Bankruptcy of Davis; Rosenthal Plywood Sales Company, mortgagee of Davis; Bradshaw and Hoover, insurance agents; Pyles and Breland, attorneys and assignees from Davis of the proceeds of the policies; Eugene Fly, Collector of Internal Revenue of the United States for the State of Mississippi. The plaintiffs were all citizens of different states from all of the defendants, and there was also the requisite diversity of citizenship among the claimants.[3] Plaintiffs alleged that each of them had in its custody or possession money in excess of $500 which it was obligated to pay under policies of insurance each in an amount in excess of $500; that there were two or more adverse claimants to such money, citizens of different states, claiming to be entitled to the money or to one or more benefits arising by virtue of the policies of insurance; that each complainant insurance company had deposited in the registry of the Court the sum of $2,078.43, with the exception of one company which deposited $1,662.74; that complainants believed that the defendants named constituted all parties having, or claiming, any of the proceeds of the policies of insurance; that the complainants were without interest in the controversy but were merely disinterested stakeholders desiring to make payments to the person or persons entitled thereto and to avoid double liability, as well as the necessity of defending suits brought by one or more of said adverse claimants, to prevent which an injunction was sought in conformity with the statute.

Those allegations were fully established by the following facts:

Davis, the insured, who was the owner and operator of saw mills, had executed and delivered a mortgage to Rosenthal Plywood Sales Company on these mills to secure present and future indebtedness. Some of the property covered by the fire insurance policies was damaged or destroyed by fire. There was an adjustment of the fire damage and the amounts claimed in the proofs of loss have been deposited in Court, and there is no controversy on that issue.

The mortgagee claims that under Sec. 5695, Miss.Code of 1942, providing for loss payable clauses to mortgagees in fire in-

"(ii) The complainant (a) has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court; or (b) has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the complainant with the future order or decree of the court with respect to the subject matter of the controversy.

"Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

"(b) Such a suit may be brought in the district court of the district in which one or more of such claimants resides or reside."

2. Rule 22 (1) and (2), F. R. C. P., state that:

"(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

"(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules."

3. Maryland Casualty Co. v. Glassell-Taylor & Robinson, 5 Cir., 156 F.2d 519.

surance policies, it is entitled to the proceeds of the policies. The Collector of Internal Revenue asserted a lien on the funds for unpaid income taxes. Bradshaw and Hoover, insurance agents, interposed a claim of $2,690.14 for unpaid premiums on the insurance policies. Davis went into bankruptcy after the fire and the receiver in bankruptcy also set up a claim to the funds. Pyles and Breland claimed the entire proceeds of the policies by virtue of an assignment made to them by the insured between the dates of the fire and bankruptcy.

The claim of the receiver in bankruptcy was adversely adjudicated early in the proceedings, but that of the insurance agents for the amount of the premiums was sustained and paid. Upon final hearing the lower Court sustained the interpleader and held that the mortgagee, by virtue of the Mississippi statute [Sec. 5695, supra], was entitled to the entire proceeds of the policies, less costs, attorneys' fees, and agents' premiums—since the mortgage indebtedness was greatly in excess of the amount due under the policies.

Appeals were taken by the Collector of Internal Revenue, and by the assignees, Pyles and Breland, with Rosenthal Plywood Sales Company and the insurance companies as appellees. At the time of the oral argument before this Court announcement was made that the United States had collected its indebtedness in full from another source and its appeal was thereupon dismissed, leaving as claimants before this Court only the mortgagee, Rosenthal Plywood Sales Company, and the assignees, Pyles and Breland. After the announcement of the disposition of the claim of the United States, counsel for Pyles and Breland abandoned objections and argument as to the propriety of the interpleader suit, and thereupon the contest between these two remaining and rival claimants to the fund centered chiefly on the questions as to whether or not the provisions of Sec. 5695, supra, have the effect of automatically writing a loss payable clause in favor of the mortgagee into each fire insurance policy covering property embraced in a mortgage, and as to what bearing, if any, the aforementioned statute has as to the action of six of the fire insurance companies in attaching loss payable clauses to these policies in favor of the mortgagee in compliance with the unilateral request to the insurers by the attorney for the mortgagee before the date of the fire.

When a divergence of opinion arose among the members of the panel of the Court that heard the initial argument, the case was then referred to the Court en banc, before which the case was reargued.

On the reargument counsel for the assignees conceded that they had theretofore attempted to waive all questions as to the propriety of the interpleader [3a] suit and that such waiver was effective provided the Court had jurisdiction, which they then insisted was absent and could not be waived. Therefore, the question of jurisdiction stands at the threshold of our considera-

---

**3a.** After making this waiver on the morning of the original argument counsel for appellants thereafter consented in the Court below to the making of the following order by the lower Court with the result that between the first and second arguments of the case the Court below on May 2nd made and entered the following order from which no appeal was taken:

"This Day this cause came on by consent of and under an agreement of all of the parties hereto, and it appearing unto the Court that the appellants, Dixon L. Pyles and Dan E. Breland, Have Abandoned All Contentions Against The Insurance Company Appellees And Have So Advised The United States Court Of Appeals For The Fifth Circuit and that there is no objection on the part of any of the parties hereto to the payment out of the funds held in the registry of the Court in this cause of the attorney's fees and expenses allowed by this Court to Watkins & Eager as attorney for the insurance company appellees, plaintiffs herein, in the amount of $1,000.00.

"It is, therefore, ordered and adjudged that the Clerk of this Court be and he is hereby authorized and directed to pay to Watkins & Eager as attorneys for the plaintiffs herein the sum of $1,000.00 as attorney's fees and expenses out of the funds held in the registry of the Court in this cause."

tion and should be disposed of first since an absence of jurisdiction of the interpleader suit would dispose of the case.

Apropos this subject it is noted that no question was argued before us as to the amount of the fire loss nor as to any failure of the insurance companies to tender into Court the sum of $14,133.33, the entire amount of the loss as shown in the proofs as submitted by the insured. Unless there is a claim in the pleadings of double liability against the insurance companies under the policies of insurance, no single interpleader plaintiff had a liability in excess of $3,000 such as would have been requisite had the suit been brought as one in strict interpleader under the law in effect prior to the enactment of the Federal Interpleader Statute or the adoption of Federal Rules of Civil Procedure 20(a), 22(1) and (2). This, however, was not brought as a suit in strict interpleader under the ancient rules of practice but was in complete conformity with the provisions of the Federal Interpleader Statute as amended in 1936[4] and as supplemented by Rule 22, F.R.C.P., and in effect at the time of the bringing and disposition of the suit in the lower Court, which require that:

1. Plaintiff must have custody or possession of money or property, or must have issued a policy or other instrument having a value in excess of $500.

2. Two or more adverse claimants, who are citizens of different states, claim themselves to be entitled to such money or property or to one or more of the benefits arising by virtue of a policy or other instrument.

3. Deposit of such money or property, or the amount or value of such instrument, be made into the registry of the Court or bond given therefor.

4. Such suit be brought in the District Court where one or more of such claimants resides or reside.

■■■ The joinder of the plaintiffs under Rules 18(a), 19(a), 20, and 22(1) of F.R.C.P., whereby plaintiffs each assert a right to relief arising out of the same series of transactions or occurrences involving a question of law and fact common to all the plaintiffs, was proper. Each plaintiff had issued a policy of insurance having a value in excess of $500, all of which was claimed by Rosenthal Plywood Sales Company, a citizen of a state different from that of any other claimant, and each other claimant asserted a right to all or a part of the benefits of the insurance policies. The amount now admitted by all to be due for the fire loss was deposited into the registry of the Court, or the equivalent bond given therefor. The suit was brought in the district where one or more of the claimants resides or reside. The plaintiffs, although not required to do so,[5] stood neutral as to the amount paid into Court. The claims of the conflicting claimants arising out of obligations of the insured to pay out of the proceeds of the policies a mortgage on the one hand and to pay attorneys' fees on the other, have a common origin, although the Court could have entertained the suits even though the claims were adverse to, or independent of, one another.[6]

■■ We think that under Sec. 901 of Title 28 U.S.C.A.[6a], Sec. 2410, Title 28 U.S.C.A., New Judicial Code, the Court from the beginning of the litigation had jurisdiction of the United States. This section provided that: "Upon the conditions herein prescribed * * * the consent of the United States is given to be named a party in any suit which is now pending or which may hereafter be brought

---

4. The Interpleader Statute, Sec. 41 (26), Title 28 U.S.C.A., was amended Jan. 20, 1936, and that amendment remained in effect until June 25, 1948, the date of the adoption act of the new United States Code relating to the Judiciary and Judicial Procedure, in which the sections re-

lating to interpleader are 1335, 1397, and 2361, Title 28 U.S.C.A.

5. Rule 22 (1), F. R. C. P.

6. § 41 (26) (ii), Interpleader Statute, Title 28 U.S.C.A.

6a. Complaint alleged jurisdiction of United States under this section.

in any United States district court, * * * and in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real estate or personal property, *for the purpose of securing an adjudication touching any* mortgage or other *lien the United States may have or claim on* the premises or *personal property involved."* [Emphasis added.]

Here the United States claimed a lien upon the proceeds of insurance policies. Therefore, an adjudication touching a lien the United States claimed on the personal property involved was sought. The United States was notified in accordance with the statute, entered the case, and sought to have the lien adjudged in its favor. Thus, as the Court below held, it had jurisdiction of the United States.

 This was a statutory interpleader and not a case of pure interpleader. The plaintiffs stood neutral only as to the sum of $14,133.33, the amount of the fire loss as adjusted, but they did not stand neutral on claims of the assignees, Pyles and Breland, in excess of that sum. The assignees sued plaintiffs in the State Court for $17,000, the face value of the policies. The declarations there filed against the insurance companies, which were identical except as to name and amount, one of which was attached to the bill of interpleader, show that they claimed $2,500 from each insurance company instead of $2,078.43, the amount deposited by each company, except one, which deposited a smaller sum. This declaration was made a part of the bill of interpleader. As to the difference between $14,133.33, so deposited, and $17,000, so claimed, the plaintiff insurance companies did not stand neutral, but defended against such additional demands. Moreover, when the assignees filed their answer in the interpleader suit they reiterated this claim of a right to recover the full face of the policies in the sum of $17,000. They also asserted an independent liability on the part of the insurance companies from its liability to any other claimant. Their answer denied that the insurance companies were disinterested stakeholders. The United States

and Plywood signed a stipulation that the sum of $14,133.33 was the correct amount of the appraised loss of the insured property but assignees did not sign same. Since the assignees had claimed $17,000 rather than the amount of the loss, the insurance companies were not dismissed upon holding by the Court below that it was an appropriate case for interpleader. They were required to stay in the case and introduce the testimony on final hearing of the insurance adjuster as to the damage caused to the property by the fire. Under these facts we cannot properly call this a case of pure interpleader. It seems to be merely a statutory interpleader wherein the plaintiffs need not stand neutral as to all of the claims of all of the parties.

The lack of neutrality in these circumstances seems to differentiate this case in one respect from the case of Cramer v. Phoenix Mut. Life Ins. Co. of Hartford, Conn., 8 Cir., 91 F.2d 141, 146, wherein it was held that the claimants were the real contestants and that a plaintiff who was a mere stakeholder was somewhat of a nominal party whose citizenship did not determine jurisdiction, since in the present case the plaintiffs were not mere stakeholders as to the claim asserted by the assignees in excess of the deposit. But the Cramer case strongly supports our view that all the adverse claimants are not required to be citizens of different states. In that case the Court, speaking through Judge Gardner, said:

"Appellants ably argue that citizenship of the same state of two of a large number of adverse claimants is fatal to the jurisdiction of the federal court, but we think the question has been put to rest by the recent decision of the Supreme Court in Dugas v. American Surety Co., [300 U.S. 414], 57 S.Ct. 515, 516, 81 L.Ed. 720. That case arose under the same statute as that here involved. It affirms a decision of the Circuit Court of Appeals of the Fifth Circuit, reported in 82 F.2d 953. In the bill of interpleader it appeared that there were a large number of adverse claimants whose claims in the aggregate exceeded the amount due from the interpleader. * * * There were in fact a large number of

claimants residents of Louisiana, where the suit was brought. In the opinion of the Circuit Court of Appeals, 82 F.2d 953, it is said, ' * * * Some of the claimants now are, and at all times mentioned in the bill were, citizens of named states other than Louisiana, and some of these claimants now are, and at all times mentioned in the bill were, citizens of the state of Louisiana.'

"In the course of the opinion of the Supreme Court it is noted that, 'Many other claims arising out of insurance written in Louisiana by the Lumbermen's Reciprocal Association were asserted under the qualifying bond.'

"It is also said, 'Plainly the court had jurisdiction of both the subject-matter and the parties. * * *'

"Again it is said: 'The jurisdiction to entertain the supplemental bill is free from doubt.'"

In the present case there was diversity of citizenship between all plaintiffs and all defendants; there was a real controversy between all claimants; there was diversity between Plywood, a citizen of Illinois, and all other claimants, except the United States, against whom diversity was not requisite. Plywood claimed the entire fund. Pyles and Breland claimed more than the entire fund. There was no way for any of the parties to be re-aligned on the same side as to the amount paid into the registry of the Court unless the receiver of the insured and his assignees could have been. Since the insurance companies were required to stay in and defend against the suit of Pyles and Breland for a sum in excess of the amount paid into Court they were necessary parties and fulfilled the constitutional purpose as to suits between citizens of different states.

■ We hold, however, that even if the plaintiffs in the interpleader suit had been dismissed before final decree and had gone out of the case, the requirement of the statute would be met if there were two or more claimants who were citizens of different states regardless of how many claimants there might be who were citizens of the same state with other claimants. We think

this question has been settled by two decisions of this Court. In Dugas v. American Surety Co., 5 Cir., 82 F.2d 953, we said: "Some of the claimants now are, and at all times mentioned in the bill were, citizens of named states other than Louisiana, and some of these claimants now are, and at all times mentioned in the bill were, citizens of the state of Louisiana." and, so saying, held that there was jurisdiction of the interpleader suit. On appeal, 300 U.S. 414, text 425, 57 S.Ct. 515, 519, 81 L.Ed. 720, the Supreme Court said: "Plainly the court had jurisdiction of both the subject-matter and the parties."

Our other case is Maryland Casualty Co. v. Glassell-Taylor & Robinson, 5 Cir., 156 F.2d 519, 521, in which the plaintiff was a corporation of Maryland, but the citizenship of the defendants was as shown below:

The contractors were citizens of Louisiana; Harris Associates, Inc., was a citizen of Delaware; Workman was a citizen of Texas; Krause & Managan, Inc., was a corporation of Louisiana; Mitchell was a citizen of Texas; Mid-Continent Supply was a citizen of Delaware; Hydraulic Development Corporation was a citizen of Massachusetts; Ray was a citizen of Louisiana; W. S. Dickey Clay Mfg. Co. was a citizen of Louisiana; McWane Cast Iron Pipe Company was a corporation of Alabama. We said: "There was the diversity of citizenship between plaintiff and claimants as is required * * * in an interpleader suit under Sec. 41(26), Title 28 U.S. C.A." notwithstanding the fact that there were six adverse claimants residing in Louisiana.

In Railway Express Agency v. Jones, 106 F.2d 341, 344, the Seventh Circuit said, in reference to diversity of citizenship between adverse claimants in an interpleader suit that: "It was not necessary that there be complete diversity of citizenship among all the adverse claimants. Cramer v. Phoenix Mutual Ins. Co., 8 Cir., 91 F.2d 141."

See also Girard Trust Co. v. Vance, D.C., 5 F.R.D. 109. In Blackmar v. Mackay, D.C., 65 F.Supp. 48, 51, to the same effect, there is this statement: "Professor Chafee,

the draftsman of the 1936 Act, approves of such interpretation for in an article written immediately after the adoption of the 1936 Act in 45 Yale L.J. at page 975 he stated: 'jurisdiction exists if the statute can be construed to require only that two adverse claimants must be citizens of different states. Such an interpretation conforms to the general purpose of the 1936 Act, that the United States courts should be given power to settle all interpleader cases that cannot be handled by the state courts. This view is supported by five cases under the 1917 and 1926 Acts, which granted interpleaders where some antagonistic claimants were apparently co-citizens. The liberal attitude adopted by the courts in giving relief under former interpleader acts may be adopted as well toward the Act of 1936.'"

In Fireman's Fund Ins. Co. v. Irwin, D.C., 82 F.Supp. 180, 182, Judge Underwood, holding to the same effect, stated: "However, in my opinion, the action is maintainable as one in the nature of a bill of interpleader under Section 41(26) [now §§ 1335, 1397, 2361] of Title 28 U.S.C.A., and Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., although there is not complete diversity of citizenship among all the defendants. Maryland Casualty Co. v. Glassell-Taylor & Robinson, 5 Cir., 156 F.2d 519; Mallers v. Equitable Life Assur. Soc., 7 Cir., 87 F.2d 233, certiorari denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343; Blackmar v. Mackay, D.C., 65 F.Supp. 48; Cramer v. Phoenix Mut. Life Ins. Co. of Hartford, Conn., 8 Cir., 91 F.2d 141, certiorari denied 302 U.S. 739, 58 S.Ct. 141, 82 L.Ed. 571."

In Moore's Federal Practice, Volume 2, page 2210, Sec. 22.08, speaking of jurisdiction under the Federal Interpleader Statute, it is said: "It has been rather definitely settled that if there is diversity of citizenship between two adverse claimants the co-citizenship of another rival claimant will not defeat jurisdiction under the Act."

He cites in support of the foregoing text the following cases: Cramer v. Phoenix Mut. Life Ins. Co. of Hartford, Conn., 8 Cir., 1937, 91 F.2d 141, 146 et seq., cert. den. 1937, 302 U.S. 739, 58 S.Ct. 141, 82 L.Ed. 571, reh. den. 1937, 302 U.S. 778, 58 S.Ct. 263, 82 L.Ed. 602; Dugas v. American Surety Co., 5 Cir., 1936, 82 F.2d 953, aff'd 1937, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720, reh. den. 1937, 301 U.S. 712, 57 S.Ct. 787, 81 L.Ed. 1365; Pac. Mut. Life Ins. Co. v. Lusk, D.C.W.D.La.1930, 46 F. 2d 505; Globe & Rutgers Fire Ins. Co. of N. Y. v. Brown, D.C.W.D.La.1931, 52 F.2d 164.

■ If in the face of these decisions we were in any doubt that Congress, in the enactment of the Federal Interpleader Statute—which was designed to bring into one court all of the claimants to a particular fund so that it could be equitably divided among all rather than being a race to the swift—, intended so to restrict the statute that there could be only one claimant to the fund per state, that doubt would be put at rest by subsection (b) of the Federal Interpleader Act of 1936, under which this case was filed and tried, which, in defining the venue of interpleader suits, provides: "(b) Such a suit may be brought in the district court of the district in which *one or more of such claimants resides or reside.*" [Emphasis added.] for it is obvious that if there could be only one adverse claimant per state there certainly could not be more than one of such claimants in any court district, since federal court districts do not extend across state boundaries.

The relief sought by the plaintiffs was the prevention of double liability and a multiplicity of suits as designed by the Act. See Maryland Casualty Co. v. Glassell-Taylor & Robinson, et al., 5 Cir., 156 F.2d 519, and National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212.

■ Thus it appears that the suit falls squarely within the Federal Interpleader Statute and the Court below was not without the jurisdiction conferred thereby.

This conclusion brings us to a consideration of the merits of the case.

There was no clause written into the mortgage or into the policies providing for the payment of any losses occurring thereunder to the mortgagee, in the event of a fire. Such clauses were, however, added as riders to six of the policies upon request

by counsel for the mortgagee to the insurance companies some time after the execution of the policies and prior to the fire. This request appears to have been unilateral, or not joined in by the insured. But Plywood contends that its right to recover does not depend entirely upon such loss payable clause rider thus added to the policies but that it is entitled to recover by virtue of the Mississippi statute, Sec. 5695, supra, which, it insists, writes into every fire insurance policy on property included in a mortgage the New York Standard loss payable clause. The lower Court agreed with this contention. The pertinent parts of this statute are as follows:

"§ 5695. Mortgage clause.—Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz.:

"Loss or damage, if any, under this policy, shall be payable to (here insert name of the party), as . . . Mortgagee (or trustee), as . . . interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, and in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same; * * *."

If, as the mortgagee contends, the foregoing statute automatically writes into each fire insurance policy on mortgaged property the regular New York Standard mortgage loss payable clause, then the mortgagee should prevail because its rights would be prior in time and superior in right to those of the assignees who stand in the shoes of the insured. It appears that the assignments of the proceeds of the policies were made after the fire and for the purpose of making compensation to Pyles and Breland for services rendered by them to the insured as his attorneys. The lower Court found that the insured was indebted to Plywood in the sum of $39,961.95, as evidenced by a valid judgment rendered in a state court against the insured in favor of the mortgagee. Any sums recovered in this action by Plywood must, of course, be applied in reduction of the mortgage indebtedness of the insured. It is obvious that the insured has no right, legal or otherwise, to have his mortgage indebtedness thus reduced and at the same time also to have his indebtedness to his attorneys paid or reduced by another or double, recovery under the policies of insurance for the same fire loss.

In Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729, 732, 25 L.R.A.,N.S., 1226, Ann.Cas.1912B, 262, the Supreme Court of Mississippi, in a case involving the statute in question, said: "No additional consideration is required to be paid as a condition for the insertion of the mortgage clause in the insurance policy, *nor is any additional risk incurred by the insurance company.* The consideration paid by the original insurer constitutes a sufficient and valuable consideration for the contract between the insurance company and the mortgagee, *since it imposes no increased hazard; nor does it increase the amount of the insurance contract,* but merely imposes upon the insurance company the *obligation* of paying to the mortgagee, in the place of the insured and out of the proceeds of the policy, such sum, *not in excess of the face value of the policy,* as the interest of the mortgagee, in the identical thing insured, shall amount to." [Emphasis added.]

In Aetna Insurance Co. v. Cowan, 111 Miss. 453, 71 So. 746, 748, the Supreme Court again decided the question as to whether or not the insertion of a loss payable clause by the insurance company in favor of the mortgagee created a new and independent contract for an additional or double liability. The Court said:

"The main contention of the plaintiff is * * * that the loss payable clause constitutes a new and independent contract in no way dependent upon the original policy

between the owner and the insurer, and that consequently the plaintiff was not bound by the appraisement agreement in the policy. *We do not think this contention is sound.* The mortgagee's contract and his rights thereunder are the same as the rights of the insured, except as modified by section 2596 of the Code of 1906 prescribing a form of mortgage clause to be written in all policies, and providing that the mortgagee shall not be subject to certain forfeitures therein enumerated which the insured is subject to. The provisions of this section of the Code are written into every policy containing a mortgage clause by operation of law. The section in question automatically writes itself into the insurance contract. [Emphasis added.] * * *

"It may be true that a new and independent contract is made between the mortgagee and the insurance company by the insertion of the mortgage clause, but after all *the policy itself is the contract between the insurer and the mortgagee. It is upon the policy and its terms that the mortgagee must recover* in the event of loss, and the only difference between the contract of the mortgagee and the assured are the provisions of section 2596, which writes certain provisions into every mortgage clause, relieving the mortgagee from cirtain forfeitures that may be incurred by the assured. It is upon that policy that the mortgagee must recover if at all. If, as he insists, there exists an independent contract between himself and the insurer, where are the terms of that contract to be found except in the policy of insurance? The policy designates the kind of insurance undertaken. The policy designates the property the policy covers. *The policy names the maximum amount recoverable thereunder.* If the mortgagee has an independent contract of insurance from that of the assured, the terms of the contract nevertheless are the same, except as modified by law. *By an independent contract, however, our court meant nothing more than, if the policy of insurance is void as between the insurance company and the assured on account of some act or omission on the part of the assured, that never-*

*theless it will be valid and binding between, the insurance company and the mortgagee. Except for section 2596 mortgage clauses would probably be so written that the mortgagee, though not himself at fault, could not recover in any case where the assured himself could not recover."* [Emphasis added.]

In Hennessey v. Helgason, 168 Miss. 834, 151 So. 724, 725, the Supreme Court of Mississippi explained its position in the Bacot case by saying: "In Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729, 25 L.R.A.,N.S., 1226, Ann.Cas.1912B, 262, it was held that the mortgage clause of the statute above referred to has the effect of making an independent contract in favor of the mortgagee. *In other words, the effect is to issue two policies, one to the mortgagor for the difference between the mortgage debt and the amount of the policy and the other in favor of the mortgagee to the extent of his debt."* [Emphasis added.]

The decisions in Aetna Ins. Co. v. Cowan, supra, and in Hennessey v. Helgason, supra, were written subsequent to the decision in the Bacot case, supra, and in explanation of the meaning of language used in the Bacot case that tended to leave the impression that the insertion of a loss payable clause in a policy of insurance was the equivalent of the issuance of two policies of insurance and the making of an independent contract, and it now clearly appears that under the later decisions of the Mississippi Supreme Court, and even under the Bacot case, it was never intended that there would be any increase in the amount of the insurance contract in excess of the face value of the policy, and that the loss payable clause merely had the effect of rendering the insurer liable to the mortgagee to the extent of his debt and to the insured for the difference, if any, between such debt and the amount due under the policy.

Since the insured could not have this double benefit and since the assignees must stand in his right, it necessarily follows that the assignees cannot also recover against the insurance companies if the mortgagee has the prior right to such

recovery. The mortgagee does not stand in the shoes of the insured under a clause providing for payment of any loss occurring under the policy to the mortgagee for it has been held by the Supreme Court of Mississippi, and by courts generally, that under a New York Standard mortgage loss payable clause the mortgagee may recover notwithstanding the fact that the insured mortgagor could not have recovered because of his having caused the fire or otherwise having breached covenants and warranties of the policy.

The last phase in the consideration of this case is as to whether or not Sec. 5695, Miss. Code of 1942, automatically becomes a part of every fire insurance policy insuring property on which there is a mortgage or deed of trust. This Court is bound by the pertinent decisions of the Supreme Court of Mississippi. We note that in Aetna Ins. Co. v. Cowan, supra, the Mississippi Supreme Court, in discussing the effect of Sec. 5695, supra, said: "The provisions of this section of the Code are written into every policy containing a mortgage clause by operation of law. The section in question automatically writes itself into the insurance contract."

In Bacot v. Phoenix Ins. Co., supra, the Court, in discussing the pertinent section of the Mississippi statutes, said: "When a mortgage clause is inserted in an insurance policy, its effect is limited and controlled by section 2596 of the Code of 1906, and the rights of the parties are determined by the provisions of the above statute, which automatically writes itself into every insurance contract where the insurance company allows a mortgage clause to be inserted. * * * The rights of the mortgagee under this policy turn upon a construction of this statute, and, if the mortgagee is entitled to recover, it is by virtue of this statute and independent of the provisions contained either in the original policy or the mortgage clause, in so far as same may conflict with the statute."

See also Hartford Ins. Co. v. J. R. Buckwalter Lumber Co., 116 Miss. 822, 77 So. 798.

In Tucker Printing Co. v. Board of Supervisors, 171 Miss. 608, 158 So. 336, 338, the Supreme Court of Mississippi said: "* * * The law in force at the time the contract was made forms a part of it, and is written into the contract as much as if expressly incorporated therein. Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793; Ennis Waterworks v. City of Ennis, 233 U.S. 652, 34 S.Ct. 767, 58 L.Ed. 1139; Ogden v. Saunders, 12 Wheat. 213, 6 L.Ed. 606; Louisiana ex rel. Southern Bank v. Pilsbury, 105 U.S. 278, 26 L.Ed. 1090; White v. Hart, 13 Wall. 646, 20 L.Ed. 685; Gunn v. Barry, 15 Wall. 610, 21 L.Ed. 212; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Selover, Bates & Co. v. Walsh, 226 U.S. 112, 33 S.Ct. 69, 57 L.Ed. 146; Murray v. Charleston, 96 U.S. 432, 24 L.Ed. 760; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L.Ed. 403; McCracken v. Hayward, 2 How. 608, 11 L.Ed. 397; Price v. Harley, 142 Miss. 584, 107 So. 673."

The wording of the first paragraph of the statute is that: "Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust *shall* have attached or *shall* contain substantially the following mortgagee clause." [Emphasis added.]

We cannot rewrite these unambiguous and mandatory words. They are such, in our opinion, as to *expressly*, and without more, cast upon the insured mortgagor the duty to have attached to an insurance policy taken out by him the statutory loss payable mortgage clause in favor of his mortgagee, and also *implicdly* to make it the duty of the insurer likewise to comply with the statute. Since it is the duty of the mortgagor and of the insurer to have attached or inserted such a loss payable clause, then that which the statute requires to be done will be regarded as having been done. The statute does not require the consent of the insured; it does not require the mortgagor to take out a policy of insurance but only that if he takes out a policy on buildings covered by a mortgage such policy shall contain a New York Standard loss payable clause in favor of the mortgagee. The statute being unambiguous,

we are not called upon to determine whether or not the Legislature intended by such enactment to prevent fraud, lessen the temptation to arson, or to facilitate the lending of money by giving better protection to banks and money lenders by allowing the lender to recover against the insurance company even though the insurance company might have been able to defeat a recovery by the insured because of his breach of covenants, etc. Because of the fact that insurance vitally affects the public interest it has from time immemorial been closely and rigidly regulated and we cannot hold that the Legislature of the State, in the exercise of its police power, could not lawfully pass such a statute.

 Quotations hereinabove from state decisions are to the effect that "the section in question automatically writes itself into the insurance contract", in the light of which we cannot say that the loss payable clauses issued or agreed to be issued, by the insurance companies without the consent of the insured were invalid, nor that because the insurance companies complied with the obligation placed upon them by the statute they thereby became liable for the entire loss to the mortgagee and also to the insured, or his assignees.

There is only one mortgage or deed of trust, and all parties knew of the existence of it. If the words of the statute mean what they say they have placed in the mortgagee a superior right over the mortgagor to the proceeds arising from the fire damage. By the same token the assignees, who were not in the category of bona fide purchasers, have no greater right, but must stand in the shoes of the assignor.

The judgment of the lower Court is affirmed.

SIBLEY, Circuit Judge (concurring).

I concur in the opinion and judgment, but wish to add some words on the subject of diversity of citizenship as an essential of federal jurisdiction. The statute, 28 U.S.C.A. § 41(26), as amended by the Act of 1936, undertakes to give jurisdiction of bills of interpleader or bills in the nature of bills of interpleader filed by persons described if "two or more adverse claimants, citizens of different States, are claiming to be entitled, * * *." Is it meant that the adverse claimants may be of citizenship diverse from the plaintiffs, or diverse from each other? I think either diversity will suffice. We must bear in mind also the words of Article III, Sec. 2, "The judicial Power shall extend to * * * Controversies * * * between citizens of different States." I assume that complete diversity is meant, as is now indicated in Revised Title 28 U.S.C.A. §§ 1332 and 1335. In Maryland Casualty Co. v. Glassell-Taylor, 5 Cir., 156 F.2d 2d 519, the bill was in the nature of interpleader, the plaintiff denying liability to any one, and having citizenship diverse from all claimants, though the claimants' citizenships were not wholly diverse from each other. There was undoubtedly a controversy between the plaintiff on the one side and all claimants on the other, and I think the words of the statute and Constitution were satisfied. No money was paid into court but a bond was given to stand as a distributable fund if the plaintiff should be held liable. The present case is one of pure interpleader, the plaintiffs acknowledging liability on the policies and paying their face amount into court to be distributed.[1] They have now been discharged from court, and have been paid attorney's fees. Their citizenship is diverse from that of all defendants, but it is said they had no controversy with any one, and Treines v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85, is cited, where in a case of pure interpleader in which such diversity was lacking it was said the plaintiff's citizenship was immaterial, the real controversy being between

1. It is argued that this also is a case in the nature of interpleader, because of a suit in a state court for the face of the policies instead of the amount of the loss subsequently fixed without contest. On the face of this complaint the allega- tions are of a pure interpleader, the plaintiffs being simple stake-holders. They were in fact such, and the decree is express to that effect. Attorneys fees and other costs were allowed them on that basis.

two groups of claimants whose citizenships were wholly diverse. In the present case there is a claimant of Illinois, a mortgagee, claiming the whole fund; and the insured and his trustee in bankruptcy claim the whole adversely to the mortgagee, and assignees of the insured claim adversely to every one else, all being of Mississippi. The plaintiffs have citizenship diverse from all defendants. In filing their bill they sought the equitable remedy of interpleader against all defendants, and an injunction against all of them, and leave to put the money into court in discharge of their personal liability. I think initially there was enough of a controversy between plaintiffs and defendants to justify federal jurisdiction under this statute. With the injunction granted and the fund deposited, it now becomes necessary for the court to ascertain its owners, just as it must do in a receivership case, and a dependent jurisdiction arises to do this regardless of the citizenship of any claimant or the amount of his claim. But here the Illinois claimant can be aligned against all the Mississippi claimants with a perfect diversity, if that be necessary. Although the original plaintiffs and their initial controversy have been disposed of, the court still has the power and duty to dispose of the fund.

I do not think the original presence of the United States as a claimant need worry us. If the United States was subject to suit, there is alway federal jurisdiction thereof. If the United States saw fit to intervene to claim the fund, it could do so without disturbing the jurisdiction. But the United States has formally withdrawn from the case, having been otherwise satisfied, and this has cured any difficulty that there may have been on this point.

HOLMES, Circuit Judge (dissenting); McCORD, Circuit Judge (concurring in the dissent).

Is this a true bill of interpleader, a suit in the nature of an interpleader, a statutory interpleader, or a civil action of interpleader, and did the court below have jurisdiction of it on the ground of diversity of citizenship between adverse claimants? If so, should the appellants have been enjoined from the prosecution in the state court of their suits pending therein against the insurance companies? There are several reasons why these questions should be answered in the negative.

This action was not authorized under the federal practice, and the injunction should be dissolved, because the case does not come within the requirements of the federal interpleader statute that reduces the jurisdictional amount to $500. The amount in controversy here upon each policy is less than $3,000 and more than $500, exclusive of interest and costs. The several amounts due under each policy may not be combined to obtain the jurisdictional amount of over $3,000, which is necessary to confer jurisdiction in ordinary diversity cases.[1] Moreover, even if it has jurisdiction, the federal court should withhold its exercise until the state court speaks upon a doubtful question of state law, involving two state decisions one of which is claimed to have been overruled by implication. A decision by this court on the merits may be set aside in principle at any time by the Supreme Court of Mississippi.

There is no contention by the parties that this is a true bill of interpleader; but the argument is that the remedy, which was invoked by the plaintiffs below, was in the nature of an interpleader, and was authorized by 28 U.S.C.A. § 41(26), as amended, New Title 28 U.S.C.A. § 1335,[2] and Rule 22 of the Federal Rules of Civil Procedure. Said · rule and statute have abolished many requirements of the ancient remedy. The result is that the practice

1. Town of Elgin v. Marshall, 106 U.S. 578, 582, 1 S.Ct. 484, 27 L.Ed. 249; Ex Parte Phœnix Ins. Co., 117 U.S. 369, 6 S.Ct. 772, 29 L.Ed. 923; Clay v. Field, 138 U.S. 479, 11 S.Ct. 419, 34 L.Ed. 1044; Di Giovanni v. Camden Ins. Association, 296 U.S. 64, 67, 56 S.Ct. 1, 80 L.Ed. 47; Thomson v. Gaskill, 315 U.S. 442, 447, 62 S.Ct. 673, 86 L.Ed. 951.

2. Although this action was filed on Nov. 28, 1947, references in this opinion will be made to the new code for convenience where no pertinent changes have been made except in arrangement or phraseology. See Reviser's Notes, page 1837, Section 1335, New Title 28.

at this time is more favorable to plaintiffs than it has ever been in suits of this character in the federal courts. This does not mean, however, that there are no limits to the uses or abuses of the federal remedy by interpleader; or that, merely by labelling its complaint an action of interpleader, a plaintiff with a dual or multiple liability may pay into court an amount sufficient to satisfy one creditor and compel another to litigate over a fund that is equal to an amount owing in any event to one of the alleged claimants.

There are still some requisite characteristics of the remedy of interpleader. These are important not only for jurisdictional purposes but because a court of the United States is not permitted to grant an injunction to stay proceedings in a state court, except as expressly authorized by an act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C.A. § 2283. A civil action in the nature of an interpleader, under said section 1335, falls within the exception to the statutory prohibition against injunctions to stay proceedings in a state court; but, in exercising such extraordinary jurisdiction, the federal courts should be careful to avoid granting an injunction in cases not clearly falling within the exception. An abuse of the power of granting injunctions to stay proceedings in a state court should not be tolerated under the guise of giving a liberal construction to a remedial act.

The requisites of the federal remedy of interpleader are that there must be an actual controversy over the same thing, debt, duty, or benefit, between adverse claimants who are citizens of different states; they must have conflicting claims to property of the value of $500 or more

which is in the custody of or owing by the one invoking the remedy; and, while it is not necessary that their claims be identical or have a common origin, it is essential that such claims be mutually exclusive with reference to some portion thereof, which means that if one is sustained the other must be denied in whole or in part.[3] An averment that the plaintiff is not liable in any respect to any or all of the claimants is not required. The remedy provided by Rule 22 of the Federal Rules of Civil Procedure in no way limits the remedy given by Section 1335 of the new Judicial Code;[4] nor is the venue or jurisdiction of actions under the statute affected by the rule.[5]

So sweeping are some of the words employed in said rule that we must look to its spirit rather than its language in order to ascertain its meaning and avoid absurd results. For instance, the rule begins: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Literally, this would mean that a plaintiff may join all of his creditors in one action, as indeed he may in bankruptcy and in the distribution of the estate of an insolvent decedent or corporation. The problem in interpleader is similar to the administration in admiralty of the limited liability of the owner of a lost vessel. The intention of Rule 22, however, is to provide a remedy against the vexation of double or multiple litigation for a single demand, which the plaintiff is ready and willing to satisfy in favor of the claimant who establishes his right thereto. The remedy is not allowed to avoid the risk of two recoveries if the plaintiff has made himself liable to two claimants for the same demand.[6] The

---

3. "In using such language, courts are probably groping unsuccessfully toward the sound principle that the claim must be mutually exclusive, i. e., if one claim is right the other must be wrong." 45 Yale Law Journal, page 981.

4. Title 28 U.S.C.A. § 1335.

5. Rule 82 of Federal Rules of Civil Procedure. "Therefore, the usual principles

of jurisdiction and venue must be met in relation to any claim that is joined." Moore's Federal Rules, as amended, in pamphlet form, p. 45.

6. The following is from the brief to the court en banc on behalf of the insurance companies, p. 45: "Should this court here hold that the contract [s] of the plaintiffs with the owner and the mortgagee are of such a nature as possibly to

office of an interpleader is not to protect a party against double or multiple liability but against the expense and vexation of double or multiple litigation in respect to one liability. State of Texas v. State of Florida, 306 U.S. 398, 405–408, 59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179; National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212, 214; Crawford v. Fisher, 1 Hare 436, 441; 4 Pomeroy's Equity, p. 904 (5th Ed.).

In State of Texas v. State of Florida, supra, there is a succinct statement of the equitable principles of interpleader, which we inherited from England when the Constitution of the United States was adopted. The court was inquiring, sua sponte, into its original jurisdiction, and the question was whether the issue framed by the pleadings was a justiciable case under art. III, Sec. 2 of the Constitution. Bills of interpleader and in the nature of interpleader were considered, defined, and distinguished. There, as in the case before us, the bill was one in the nature of interpleader; there, the court's jurisdiction was derived solely from the Constitution; here, its jurisdiction is statutory, only the power to receive the jurisdiction having been granted by the Constitution; there the court's jurisdiction was not affected by said Rule 22 or the Interpleader Act, while here its jurisdiction is modified and controlled by both. That decision is a guide to this one if we measure the jurisdiction of the district court by that of the Supreme Court in interpleader cases in which a state is a party, making due allowance for changes by rules or statutes that are not applicable to the Supreme Court's original jurisdiction. This guide confirms our previous statement as to the requisites of the remedy in the federal district courts. Let us, however, emphasize the holding that before the Constitution was adopted a familiar basis for the exercise of the equitable remedy of interpleader was the avoidance of the risk of loss from the demands of rival claimants of the same thing. As to strict bills, the court says that the sole ground of equitable relief is "the risk of multiple suits when the liability is single." The same is held to be true of bills in the nature of interpleader, the ground of jurisdiction of which is to guard against "numerous demands, to only one of which the fund is subject." On the same theme, 306 U.S. at p. 407, 59 S.Ct. at page 568, 83 L. Ed. 817, 121 A.L.R. 1179, the court points out that there must be danger of two recoveries when "only one party is entitled to succeed." In the next paragraph, the court holds that its powers should be exercised to prevent the loss which otherwise might result from "the independent prosecution of rival but mutually exclusive claims." On p. 412, of 306 U.S. 59 S.Ct. 570, still referring to bills in the nature of interpleader, the gist of the relief sought is said to be the avoidance of unnecessary litigation or the risk of loss from "multiple liability when only a single obligation is owing." From all this it is clear that the claims must be mutually exclusive at least in part, and that to prevent dual or multiple suits the liability must be single. These requisites are not abrogated by any federal rule or statute; if they were, there would be little left of the federal remedy of interpleader but the name, and the unbridled right to enjoin proceedings in a state court.

Section 1335 provides that the district courts shall have original jurisdiction in amounts of $500 or more if "two or more adverse claimants, of diverse citizenship as defined in Section 1332 of this title," are claiming the same thing, debt, or benefit.[7] A difference in phraseology between the old and the new codes is worthy of notice, but there is no pertinent difference in meaning between "adverse claimants, citizens of different states," in Old Title 28 U.S.C.A. § 41(26) (a) (i), and "adverse claimants, of diverse citizenship as defined

permit a double liability, then the Bill of Interpleader should very probably be dismissed."

**7.** See Reviser's Notes, Section 1332, pages 1833 and 1834, New Title 28. See also Old Title 28 U.S.C.A. § 41 (26) (a) (i),

which gives original jurisdiction in interpleader cases if "(1) two or more adverse claimants, citizens of different states, are claiming to be entitled to such money or property, etc."

in Section 1332 of this title," in Sec. 1335(a) (1) of New Title 28. Each phrase connotes jurisdiction of controversies between citizens of different states in a legislative sense, granted by Congress under art. 3, Sec. 2, Par. 1, of the Constitution; and the historic interpretations by the Supreme Court of similar grants; but the peculiarity of the federal statutory remedy of interpleader is such that it is not every kind of diversity of citizenship that suffices to make the controversy one of federal jurisdiction. The judicial power of the United States extends, among other matters, to controversies (a) between a state and citizens of another state; (b) between citizens of different states; and (c) between a state or the citizens thereof and foreign states, citizens, or subjects; but it is only where one of the kinds of diversity of citizenship or nationality so enumerated in the Constitution is granted by Congress that a controversy may on that ground be brought into the courts of the United States. As to the general diversity jurisdiction of the United States district courts, while Chief Justice Marshall regretted ever having made the decision, it is well settled that every plaintiff must be of diverse citizenship from each defendant; in other words, federal jurisdiction on the ground of diversity of citizenship cannot be sustained unless every plaintiff is entitled to sue every defendant.[8] The same principle applies to the diverse citizenship of two or more adverse claimants under the federal interpleader statute of 1936, which restricted the jurisdiction to controversies of that particular character. Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.

Jurisdiction is determined by the situation as to citizenship of the parties at the time of the institution of the suit, regardless of separate or separable controversies. The vigor with which the federal courts have repressed attempts to extend their jurisdiction beyond the limits fixed by statutes should not be relaxed in interpleader proceedings. A federal question is not a ground of federal jurisdiction in interpleader actions unless the amount involved exceeds $3,000 exclusive of interest and costs, which it does not in any of these cases. Federal interpleader legislation did not abolish non-statutory federal interpleader, but the requisite jurisdictional amount therein was reduced under the statutory remedy.

The effort to put Bradshaw & Hoover, Inc., in the role of an adverse claimant has reacted unfavorably to the appellees for jurisdictional purposes. This alleged and admitted adverse claimant was the local agent of the insurance companies that issued the policies. It is a Mississippi corporation and the alter ego of the plaintiffs, but it was joined as an adverse claimant, and jurisdiction to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants. Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551. The insured's receiver in bankruptcy was also made a defendant; he stands in the shoes of the bankrupt, as receiver of the latter's assets, and his claim conflicts directly with the claim of appellants; it covers the full amount paid into court. He has two chances to recover, one directly and the other indirectly, but both are dependent upon the appellants losing this case. It is the duty of the court, for jurisdictional purposes, to realign these claimants according to their real interests;[9] and, when we do so, we find citizens of Mississippi, whose interests are identical with Rosenthal Plywood Sales Company, aligned against Pyles and Breland, both of whom are citizens of Mississippi. None of the insurance companies is a Mississippi corporation, but their citizenship is not a jurisdictional element; it is the diverse citizenship of the claimants that determines jurisdiction under the federal interpleader statute.[10] Bradshaw & Hoover, Inc., is a claimant for numerous premiums due it,

8. Strawbridge v. Curtis, 3 Cranch 267, 2 L.Ed. 435.

9. Peters v. Standard Oil Co., 5 Cir., 174 F.2d 162.

10. Treinies v. Sunshine Mining Co., 308 U.S. 66, p. 71, 60 S.Ct. at page 47, 84 L.Ed. 85, wherein the court said, that diversity between claimants was required "in precisely the language of the Constitution."

none of which has been paid; its interest is adverse to every other claimant, including the United States; Rosenthal Plywood Sales Company, a citizen of Illinois; and two citizens of Mississippi. The interest of the receiver in bankruptcy, a citizen of Mississippi, is with Plywood, a citizen of Illinois, because if the mortgagee wins, the proceeds will be credited on the debt of the bankrupt, who is the mortgagor, thereby releasing pro tanto other encumbered property which constitutes the res in bankruptcy.

In the bill of interpleader all of the nonresident insurance companies are aligned as plaintiffs, and all of the alleged claimants, including the United States, are named as defendant; but this arrangement is immaterial for jurisdictional purposes.[11] The test of jurisdiction here is whether the United States district courts, under 28 U.S.C.A. § 41(26), as amended, would have original jurisdiction of a civil action in a controversy over the same res by Pyles and Breland, citizens of Mississippi, against the United States, one citizen of Illinois, and two citizens of Mississippi; and wherein all parties were properly aligned as plaintiffs or defendants in accordance with their real interests in the controversy. The claims of appellants and J. C. Stennett, Receiver, are not only adverse but mutually exclusive; moreover, if Stennett cannot win, he is most interested in having the mortgagees win for the reason above stated.

A glance at the merits confirms this opinion. When the policies were issued, no mortgage clauses were inserted therein. It is said that the mortgagor intended to insure only his equity in the property. Whether or not he had the right to do this is a question of state law. There seems to be no doubt that the insurers are independently liable to the mortgagee;[12] but what about the assignees of the mortgagor, whose policies, when issued, provided that in no event was the insurance to be for more than the interest of the insured in the property? These policies, unaltered, were held by the insured at the time of the fire; though prior thereto, upon application of the creditor, mortgage clauses were issued and mailed to the attorney for the mortgagee. What was the effect of these transactions under the Mississippi law? Was it the same as if different policies had been issued at different times to insure separate interests in the same property, as the appellants claim; or did the Mississippi statute automatically write these clauses into the policies, as the mortgagee claims? The Mississippi court has not decided this specific point. Is the federal court bound to decide it in a case where its jurisdiction is questionable?

In their brief the plaintiffs contend that, under the authorities cited by them, the claimants are held to be adverse to each other although all of them do not seek the same amount and do not claim the entire fund; but nevertheless they say, as a matter of fact, that all of the claimants took the position that they were entitled to receive the entire payments under the policy. This was certainly true as to Plywood, Stennett, Receiver, and the appellants; and undoubtedly Plywood, Bradshaw & Hoover, Inc., Stennett, Receiver, and the United States, were all claiming adversely to appellants. With three out of four of the claimants being citizens of Mississippi when this suit was filed, and one additional claimant not being a citizen of any state or foreign state, only the most arbitrary alignment could arrange all the citizens of Mississippi on one side of the controversy

---

11. Treinies v. Sunshine Mining Co., supra, wherein the Supreme Court, of its own motion, raised the question of jurisdiction, and held that, under the Interpleader Act of 1936, the requirement was only as to the diversity of citizenship of the claimants. The doctrine of Strawbridge v Curtis, supra, was reaffirmed, 308 U.S. at p. 71, 60 S.Ct. 47. Diversity requirements for ordinary federal equity jurisdiction were distinguished, 308 U.S. p. 72, 60 S.Ct. at p. 47, Note 11.

12. Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729, 25 L.R.A.,N.S., 1226, Ann. Cas.1912B, 262; Scottish Union & National Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 750, 80 So. 9.

and place the lone citizen of Illinois on the other.

Since there are so many claimants for all or nearly all of the proceeds, it may be said that they cannot be aligned or realigned on either of just two sides, that every single claimant is adverse to each and every other claimant, as in a partition suit. If that view be correct, it merely discloses a number of separable controversies within a single suit, which is not wholly between citizens of different states, and of which the United States district courts did not have original jurisdiction under 28 U.S.C.A. § 41(1), as amended, and does not have it under New Title 28 U.S.C.A. § 1332.[13] Under those sections, there would be diverse citizenship between Plywood and appellants, but none between appellants and Bradshaw & Hoover, Inc.; none between appellants and J. C. Stennett, Receiver; none between appellants and the United States; none between Bradshaw & Hoover and J. C. Stennett or the United States; and none between Stennett and the United States. A single civil action between these claimants over the benefits under these policies would not lie in the federal court on the ground of diversity of citizenship; and, therefore, an interpleader suit was not authorized under the federal interpleader statute. The best that can be said for Plywood from a jurisdictional standpoint is that it had a separable controversy over these benefits with each of the other claimants; but a separable controversy or even a separate and independent controversy with a citizen of another state within a suit between citizens of the same state is not a ground of original federal jurisdiction, and was not when this suit was instituted, although at that time it was a ground of removal jurisdiction, the removal jurisdiction then being broader in this respect than the original jurisdiction of the United States district courts. Misjoinder or multifariousness, in the absence of a fraudulent joinder, does not affect the original jurisdiction of the federal district courts; and the insuperable jurisdictional defect here is that, as between the claimants, the interpleader proceeding is not a controversy wholly between citizens of different states. Neither separable controversies within a suit nor separate and independent claims in the same action, between citizens of different states, have ever been a ground of original jurisdiction of the United States district courts; but this is not true as to the removal jurisdiction, and has not been since the Act of July 27, 1866, 14 Stat. 306.

It may be argued that there should be no realignment of the parties, and that this would leave all the non-resident plaintiffs on one side and all the resident claimants on the other. That argument would be partially good if this were a suit for a declaratory judgment or merely a bill in equity for an injunction to avoid a multiplicity of suits; but even then jurisdiction would be defeated, because the requisite amount of $3,000 would be lacking and the Di Giovanni decision, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, would be applicable, which would require a dismissal of the complaint and a dissolution of the injunction. In that case, 296 U.S. p. 71, 56 S.Ct. at page 4, 80 L.Ed. 47, Mr. Justice Stone said: "Lord Hardwick, in laying down the principles which should guide the award of a bill of peace, the progenitor of the modern bill to avoid multiplicity of suits, thought that there was no occasion for the relief where the asserted right could be established by 'one or two actions at law.' Lord Tenham

---

13. Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528, was a suit for partition of land, which the court held had been wrongfully removed. Equally in point is Wilson v. Oswego Township, 151 U.S. 56, 14 S.Ct. 259, 38 L.Ed. 70, which was a suit to recover possession of 22 bonds of the value of $500 each that had been deposited in escrow. In Hanrick v. Hanrick, 153 U.S. 192, 14 S.Ct. 835, 837, 38 L.Ed. 685, a suit for the partition of land, after holding that each and all of the defendants contested the rights which the plaintiffs asserted, the court said: "The present case was a suit for partition, to which all the plaintiffs and all the defendants were indispensable parties. Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726 [36 L.Ed. 528]; De la Vega v. League, 64 Tex. 205; Stark v. Carroll, 66 Tex. 393, 1 S.W. 188."

v. Herbert, 2 Atk. 483. While it need not be said that under no circumstances could the maintenance of two suits with common issues be so burdensome or inconvenient as to justify equitable relief, see McHenry v. Hazard, 45 N.Y. 580; compare Empire Engineering Corp. v. Mack, 217 N.Y. 85, 95; 111 N.E. 475, it is nevertheless true that the necessity of maintaining two suits involving the same issue seems rarely to have been burdensome enough to impel a plaintiff to seek equitable relief. Equity not infrequently withholds relief which it is accustomed to give where it would be burdensome to the defendant and of little advantage to the plaintiff. * * * Finally it is to be noted that this tenuous ground for the exercise of equity powers is put forward as the sole medium by which suits may be withdrawn from the jurisdiction of the state courts which could not have been removed to or otherwise brought into the federal courts. * * * The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judicial sections of the Constitution. Congress, by its legislation, has declared its policy that cases involving less than the jurisdictional amount be left exclusively to the state courts, except that a judgment of the highest court of the state adjudicating a federal right may be reviewed by this Court. * * * Courts of equity, in the exercise of their discretionary powers, should recognize this policy by scrupulous regard for the rightful independence of the state governments and a remedy infringing that independence, which might otherwise be given, should be withheld if sought on slight or inconsequential grounds. * * * We think the threatened injury to respondent is of too slight moment to justify a federal court of equity, in the exercise of its discretion, in according a remedy which would entail denial of a jury trial to the petitioners and withdraw from the jurisdiction of the state courts suits which could not otherwise be brought into the federal courts."

To recapitulate briefly: When plaintiffs invoke federal jurisdiction on the ground of diversity of citizenship in an ordinary civil action, the diverse citizenship of the parties must be between the plaintiffs and defendants, the amount involved must exceed $3,000 exclusive of interest and costs, and diversity of citizenship must exist between each plaintiff and each defendant so wholly and completely that every plaintiff could sue each defendant in the federal court, regardless of one or more separable controversies within the suit; but when plaintiffs invoke such jurisdiction under the federal interpleader statute, the jurisdictional amount is reduced to money or property of the value of $500 or more, exclusive of interest and costs, and the citizenship of the plaintiffs is not a jurisdictional element but it is the citizenship of the claimants that is determinative of jurisdiction, and the character of the diversity is determined by the requirements of Section 1332 of New Title 28, formerly 28 U.S. C.A. § 41(26) (a) (i). Such requisite diversity of citizenship was wholly lacking in this case at the time the interpleader suit was instituted. It hardly seems necessary to add that in neither instance could federal jurisdiction be conferred by waiver, estoppel or consent of the parties.[14]

An incident of the equitable remedy of interpleader is the allowance of attorney's fees and court costs to a wholly disinterested stakeholder who brings money or other property into court; but the reason for this rule ceases, and the practice should cease, except in equity when the plaintiff is wholly disinterested.[15] In a recent arti-

---

14. In M. C. & L. M. Railway v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462, the court held that, in order to confer jurisdiction, the necessary citizenship must appear in the record to have existed at the time when the suit was begun; that consent cannot confer jurisdiction; but nevertheless the court has jurisdiction to award judgment for costs on remanding a case. See, also, Chica-go, Burlington and Quincy Railroad v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521.

15. Groves v. Sentell, 153 U.S. 465, 14 S. Ct. 898, 38 L.Ed. 785; Laws v. New York Life Ins. Co., 5 Cir., 81 F.2d 841, 845; Century Ins. Co. v. First Nat. Bank, 5 Cir., 102 F.2d 726, 729.

cle praising the statutory federal interpleader, it is said that the next few years are likely to see an increasing use of the remedy; and it is suggested that an amendment may be necessary to give the United States courts nation-wide power to compel the personal attendance of witnesses, regardless of state boundaries. Adverse claimants may reside thousands of miles apart, and the federal interpleader acts have practically shifted the choice of forum from the insured to the insurer, reducing the requisite amount in controversy to $500. In view of the minimum jurisdictional amount, it is worth considering that it would not take the expense of many witnesses from Maine to California or from Oregon to Florida to consume the res, and that in many of such cases claimants would fare upon the shell, as in the famous tale of the two men who found an oyster, and were disputing over who saw it first, when a lawyer arrived upon the scene and adjusted their differences.

The concurring opinion herein predicates original federal jurisdiction upon diversity of citizenship between the plaintiff insurance companies and the defendants who are called upon to interplead. Since the amount involved as to each insurance company is less than $3,000, there is no independent federal jurisdiction except under the interpleader statute, and this statute predicates federal jurisdiction only upon diversity of citizenship of the claimants. Such jurisdiction is not dependent, ancillary, or auxiliary; but, if it exists, it is independent of any main suit. It cannot be compared to an equitable receivership where the amount involved must exceed $3,000, exclusive of interest and costs, and where there must be a distinct ground of federal jurisdiction, such as diversity of citizenship between the plaintiffs and defendants or a federal question.

The concurring opinion asks: "Is it meant that the adverse claimants may be of citizenship diverse from the plaintiffs, or diverse from each other?" and answers: "I think either diversity will suffice." This answer is directly contrary to both the Act of 1936, which says, "Two or more adverse claimants, citizens of different States," and New Title 28 U.S.C.A. § 1335, which says, "Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title." The opinion further says: "There was undoubtedly a controversy between the plaintiff on the one side and all the claimants on the other, and I think the words of the statute and Constitution were satisfied." We find no applicable words in either statute authorizing the special remedy of interpleader where the citizenship of the plaintiff is a jurisdictional element. Having just stated that undoubtedly there was a constitutional controversy between the plaintiffs on the one side and all claimants on the other, the opinion, in the next sentence but one, says: "The present, case is one of pure interpleader, the plaintiffs acknowledging liability on the policies and paying their face amount into court to be distributed. They have now been discharged from court, and have been paid attorney's fees."

The opinion refers to a dependent jurisdiction of the controversy between the claimants, and compares it to the auxiliary jurisdiction of claims in an equity receivership. The statute answers this argument, as follows: "The district courts shall have original jurisdiction * * * if [there are] two or more adverse claimants, of diverse citizenship." Nothing is said about the citizenship of the plaintiff or stakeholder. It is the diverse citizenship of the claimants and the amount of $500 involved that confer jurisdiction under both acts. The concurring opinion does not mention the amounts in controversy. Diversity of citizenship and the amount in controversy are the only federal jurisdictional elements requisite for the special statutory remedy of interpleader. Where general federal jurisdiction is invoked by the equitable remedy of interpleader, there must be a federal question or diversity of citizenship between the plaintiffs and defendants, and the requisite amount involved must exceed $3,000; in the special statutory remedy, which is the kind we have here, the diversity must be between two adverse claimants and the amount involved may be as low as

$500. A federal question is not an element of jurisdiction under this special statutory remedy.

Having confused these remedies with ease and grace, the opinion relies on one requisite element of each, viz: (a) diverse citizenship between plaintiffs and defendants, and (b) diverse citizenship between adverse claimants, disregarding the fact that in (a) the requisite amount is lacking and in (b) the requisite diversity is lacking. The question of the proper alignment of the plaintiffs has been previously discussed in this dissent, and we need not repeat the discussion here. The statements that the United States could intervene if it saw fit, and had formally withdrawn from the case, are misleading. The United States did not intervene in this action; it was named as a defendant that was claiming the fund, and it filed an answer. Judgment against it was rendered, and it appealed, later dismissing the appeal. There was no amendment of the complaint or of the pleadings; the judgment appealed from is still in force; it is against the United States and its officers. The United States is not subject to suit on the ground of diversity of citizenship, and that is the only ground of federal interpleader jurisdiction under the Act of 1936 or under Section 1335 of the Judicial Code. In the absence of an amendment, federal jurisdiction is determined as of the date the suit was instituted.

28 U.S.C.A. § 2410(a) of the New Judicial Code does not grant jurisdiction of any matter or controversy to the United States district courts. It merely waives the sovereign immunity of the United States from suit, and consents for it to be named as a party, in certain civil actions in any state or federal court otherwise "having jurisdiction of the subject matter." The presence of the United States as a party by virtue of this statute neither defeats nor confers jurisdiction in an action of interpleader. The statute applies to suits in state as well as federal courts, but if the action is in a state court it may be removed by the United States to the federal court. 28 U.S.C.A. § 1444.

A plain error, which it is the right of this court to notice,[16] was the allowance of costs and attorney's fees to appellees. The allowance was improper if this suit was not one of pure interpleader. The majority opinion says, 178 F.2d 223, 224; "This was a statutory interpleader and not a case of pure interpleader. * * * Since the insurance companies were required to stay in and defend against the suit of Pyles and Breland for a sum in excess of the amount paid into Court they were necessary parties and fulfilled the constitutional purpose as to suits between citizens of different states." Contrary to this view, the concurring opinion says, 178 F.2d 229: "The present case is one of pure interpleader, the plaintiffs acknowledging liability on the policies and paying their face amount into court to be distributed. They have now been discharged from court, and have been paid attorney's fees. * * * It is argued that this also is a case in the nature of interpleader, because of a suit in a state court for the face of the policies instead of the amount of the loss subsequently fixed without contest. On the face of this complaint the allegations are of a pure interpleader, the plaintiffs being simple stake-holders. They were in fact such, and the decree is expressed to that effect. Attorneys fees and other costs were allowed them on that basis."

Therefore, we are affirming a judgment awarding costs and attorney's fees as if appellees were disinterested stakeholders. Shall we sustain jurisdiction on a ground that there is a constitutional controversy between the insurers and the claimants, as citizens of different states, and in the same judgment sanction an allowance to the same insurers on the ground that they are disinterested stakeholders? It is true that the successful claimant here waived the point, probably because its attorneys deemed this a true interpleader; but the attorneys should not be censured or their client prejudiced, even if they were mis-

---

16. Rule 24-2(b) of the Rules of the United States Court of Appeals for the Fifth Circuit.

taken as to the nature of the remedy, since the majority judges themselves are not in accord on the question. It is the claimant that is entitled to justice from this court, which should be consistently administered; and when four out of five of the judges are of the opinion that this is not a true interpleader, but a statutory action in the nature of an interpleader, the judgment appealed from should be modified consistently with the view of the majority on this point.

There has been no lack of astuteness in holding appellants to a waiver of all questions as to the propriety of the interpleader suit, provided the court had jurisdiction; and this court should be equally astute in correcting a plain error, which emerges from the record as a consequence of the opinion of a majority of the court as to the nature of the suit.

### On Petition for Rehearing.

Before HUTCHESON, HOLMES, McCORD, WALLER, and SIBLEY, Circuit Judges.

### PER CURIAM.

The petition for rehearing in the above-styled cause is

Denied.

HOLMES and McCORD, Circuit Judges (dissenting).

This court necessarily takes judicial notice of the proceedings in this case and of its own membership. Consequently, it knows that this case was heard before a duly constituted court in bank consisting of all six active judges of the court, except one who on account of illness did not participate in the hearing. Likewise, it knows that one of the majority judges who participated in the decision has since retired, effective October 1, 1949; that the judge who was ill died in July, 1949; and that successors to fill both vacancies were appointed in October, 1949.

The four active judges remaining upon the court, who participated in its decision, are equally divided as to what action should be taken upon the petition for rehearing now pending in this case, two of said judges being in favor of granting, and two in favor of denying, said petition. The retired judge is not competent to participate in the decision of the petition for rehearing because of Section 46(c) of the Judicial Code, 28 U.S.C.A. § 46(c), which provides that a court in bank shall consist of all the active judges of the circuit. Section 294(d), 28 U.S.C.A. § 294 (d), provides that no retired judge shall perform judicial duties except when designated and assigned. It is therefore apparent that a retired judge is not eligible to sit upon a hearing in bank, even by special designation of the chief judge. Since there are six active judges who constitute the court in bank, the petition for rehearing should be submitted to them. No other judge except a circuit justice, is qualified to sit on this court in this case, since the duly constituted court in bank has heretofore been ordered by a majority of the judges.

Two judges are not authorized to deny a petition for rehearing in this case. A judgment of this court does not become final until after the time allowed for the filing of a petition for rehearing; and, when said petition has been filed, the judgment does not become final until the same has been denied. Clearly it takes a majority of the judges constituting a quorum of the court to make any order or to apply any rule. See Rules 29 and 32 of the rules of this court.